938 F.2d 801
 Unempl.Ins.Rep. CCH 16381A
William JONES, German Poe, Jeanette Poe, by her next friend
German Poe, Gloria Coe, Francisco Noe, on behalf
of themselves and all others similarly
situated, Plaintiffs-Appellees,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services of the United States, Defendant-Appellant.
 Nos. 90-1683, 90-1976.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 17, 1991.
Decided Aug. 5, 1991.
 
 Jeffrey B. Gilbert, Steven Coursey, Alicia Alvarez, JoAnn F. Villasenor, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs-appellees.
 Anton R. Valukas, U.S. Atty., Eileen M. Marutzky, Ira H. Raphaelson, Asst. U.S. Attys., Crim. Div., Chicago, Ill., Stuart M. Gerson, Office of the U.S. Atty. Gen., Barbara C. Biddle, William Kanter, Peter P. Maier, John S. Koppel, Dept. of Justice, Civ. Div., Appellate Section, Felecia L. Chambers, Dept. of Justice, Federal Programs Branch-Civ. Div., Washington, D.C., for defendant-appellant.
 Before CUMMINGS, WOOD, Jr., and COFFEY, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 On August 24, 1987, plaintiffs filed an action, for themselves and on behalf of members of a class[1] against the Secretary of Health and Human Services ("Secretary"), seeking injunctive and declaratory relief. They alleged that the Secretary's "no process" policy of denying applicants new social security account numbers ("SSNs"), duplicate SSN cards, or new SSNs to correct scrambled accounts, without adequate notice or a hearing violated the Social Security Act and the due process clause of the fifth amendment to the Constitution.
 
 
 2
 The district court dismissed plaintiffs Jeanette Poe and William Jones in its July 1988 class certification order, because their injury was cured before the filing of the complaint. In the order of October 3, 1988, which clarified the class certification order, the court dismissed plaintiff Gloria Coe based on Coe's having received a duplicate SSN card before certification of the class. On August 7, 1989, the district court granted plaintiffs' motion for summary judgment, finding that the Secretary's "no process" policy violated the Social Security Act. The portion of the October 3, 1988 order dismissing Coe as class representative was vacated and Coe was reinstated as a class representative. Plaintiff Francisco Noe was dismissed as a representative plaintiff because of conflicting factual representations by Noe.
 
 
 3
 The Secretary asserts that the claims of the remaining named plaintiffs, Gloria Coe and German Poe, were moot before certification of the class and that the district court should have dismissed the action. For the reasons that follow, we agree.
 
 I. BACKGROUND
 
 4
 The Secretary administers the social security program pursuant to the Social Security Act ("Act"), 42 U.S.C. Secs. 401 et seq. The Act provides for the assignment of SSNs to qualified individuals for maintenance of accurate wage earnings records in the administration of various social security programs. 42 U.S.C. Sec. 405(c). SSNs may also be used for identification, for administration of any tax, to verify eligibility for public benefits, to obtain drivers licenses, and to show employment authorization. Id. The Act also authorizes the Secretary to promulgate rules and regulations necessary to implement the provisions of the Act. 42 U.S.C. Sec. 405(a). See 20 C.F.R. Secs. 422.101-422.140 (general procedures).
 
 
 5
 Each eligible worker who applies is to be assigned an SSN and a card to verify the SSN. 42 U.S.C. Sec. 405(c)(2)(B)(i) & (D). Duplicate or replacement SSN cards may be issued to an individual who has lost his or her card. An individual's eligibility may be determined by "such evidence as may be necessary to establish the age, citizenship, or alien status, and true identity of such applicants, and to determine which (if any) social security account number has previously been assigned to such individual." 42 U.S.C. Sec. 405(c)(2)(B)(ii). See 20 C.F.R. Secs. 422.103, 422.107.[2] The Secretary will not assign a social security number, or issue a duplicate or corrected card "unless all of the evidence requirements are met." 20 C.F.R. Sec. 422.107(a).
 
 
 6
 Plaintiffs allege that the Secretary's policy regarding the issuance of SSNs and duplicate cards fails to provide adequate notice of denial, or opportunity to contest the Secretary's decision when applicants' requests are denied. Plaintiffs label this practice the "no process" policy and contend that it violates the Act and the due process clause of the fifth amendment.[3]
 
 
 7
 The district court certified the case as a class action on July 21, 1988. On August 2, 1988, the district court rejected plaintiffs' motion for preliminary injunction and denied defendant's motion to dismiss (Jones v. Bowen, 692 F.Supp. 887 (N.D.Ill.1988)). In an October 3, 1988 clarification of the class certification order, the district court amended the class certification order to include only those individuals within the class who had not obtained original SSNs, new SSNs or duplicate SSN cards as of July 21, 1988.
 
 
 8
 On August 7, 1989, the district court granted summary judgment for the plaintiffs, holding that the Secretary's failure to provide notice and an opportunity to contest denials of SSNs, violated the Act. On January 31, 1990, the district court issued the final judgment order instructing the Secretary to provide full administrative review procedures for SSN refusals.[4]
 
 
 9
 The named plaintiffs remaining in the district court's final decision, and those with whom we are concerned in this appeal, are German Poe and Gloria Coe. Both Poe and Coe are aliens. Poe resided in the United States as an immigrant covered by an unrevoked Silva letter[5] until 1987, at which time he applied for amnesty under the Immigration Reform and Control Act of 1986 ("IRCA").[6] On September 23, 1987, Poe received his temporary residence card under IRCA. Pursuant to his new status under IRCA, Poe applied for and received a new SSN in September 1987. Coe also applied for amnesty under IRCA and was approved as a temporary resident. Coe received a duplicate SSN card in October 1987.
 
 
 10
 Poe sought a new SSN to correct problems he experienced due to a scrambled earnings account. Scrambled earnings are wages earned by one individual that are incorrectly attributed to another individual's account.
 
 
 11
 In 1985, Poe received notice from the Internal Revenue Service ("IRS") informing him of underpayment of his taxes. The wages upon which this notice was based actually were earned by another person using Poe's SSN (issued to Poe in 1975) without authorization. Poe took the IRS notice to the Social Security Administration ("SSA") office. SSA investigated the problem, and corrected Poe's account for the years 1978, 1980, 1981 and 1982. SSA deleted from Poe's account the earnings by the unauthorized user. Poe requested a new SSN in order to prevent a recurrence of this problem, but SSA orally denied the request.[7] Poe claims that he received another IRS notice in 1986 regarding underpayment of taxes in 1984, and that he presented the problem to SSA in February 1986. SSA has no record of this action taken by Poe.
 
 
 12
 In May and December of 1985, Poe's dependents had food stamps and medical cards improperly terminated because the Illinois Department of Public Aid incorrectly assumed that Poe was working. This matter was corrected after intervention by Poe's attorney. In 1986, Poe applied for unemployment compensation benefits, but those payments were delayed when a computer check resulted in the discovery that Poe's SSN was being used by another worker. The Illinois Department of Employment Security investigated the matter and, after determining that the worker was not Poe, awarded Poe the benefits due to him.
 
 
 13
 Poe alleges that his 1985 request for a new SSN to correct a scrambled earnings discrepancy was denied without adequate procedural protections, and that with those procedures, he would have proven his right to a new SSN. The complaint stated "[w]ere Mr. Poe provided with a hearing, Mr. Poe would present evidence as to his identity and of the SSN previously assigned solely to him thereby entitling him to a scrambled account number." Regarding Coe, plaintiffs argued in the complaint, "[w]ere Ms. Coe provided a hearing by the SSA, Ms. Coe would present evidence as to her identity and eligibility for a SSN."
 
 
 14
 Poe did receive a new SSN in 1987, and the prior scrambled account problems were solved before the filing of the complaint. At oral argument, counsel for plaintiffs conceded that Poe has had no problem with a scrambled account since SSA and the state agency corrected his earlier troubles. Coe received her requested duplicate SSN card in October 1987. Thus, before filing for class certification in May 1988 and before the district court certified the class in July 1988, named plaintiffs Poe and Coe obtained the new SSN and duplicate SSN card they were seeking when they filed the complaint against the Secretary.
 
 II. ANALYSIS
 
 15
 The Secretary argues that because Poe and Coe received the requested new SSN and duplicate SSN card before the certification of the class and before plaintiffs filed for class certification, no "case" or "controversy" exists and the claims are moot.[8] The district court order of October 3, 1988 limited the class to persons who had not received an original SSN, new SSN or duplicate SSN card as of July 21, 1988. In granting plaintiffs' motion for summary judgment, the district court held, however, that despite this limitation on the class, the claims of Poe and Coe were not moot because their claims were "capable of repetition, yet evading review."[9]
 
 
 16
 Article III of the Constitution requires that an actual "case" or "controversy" must exist, "not only at the date the action is initiated, but at every stage of the trial and appellate proceedings." Foster v. Center Township of LaPorte County, 798 F.2d 237, 245 (7th Cir.1986). The Supreme Court noted in United States Parole Commission v. Geraghty, 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980), that mootness has been defined as " 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).' " (quoting Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)). "The case-or-controversy requirement ensures that cases will be filed and conducted by those with the greatest interest in the outcome." Holmes v. Fisher, 854 F.2d 229, 232-33 (7th Cir.1988).
 
 
 17
 A. Capable of Repetition, Yet Evading Review
 
 
 18
 In class actions in which the named plaintiffs' claims expire before certification of the class, the claims are moot; "although, if the claim is of such a transitory nature that the district court cannot reasonably be expected to rule on the motion for certification before the expiration of the named plaintiff's claim, the certification may be deemed to relate back to the filing of the original complaint." Foster, 798 F.2d at 245. See Sosna v. Iowa, 419 U.S. 393, 402 n. 11, 95 S.Ct. 553, 559 n. 11, 42 L.Ed.2d 532 (1975). In Sosna, the Court explained, "whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review." Id. As recounted in Davis v. Ball Memorial Hospital Ass'n., Inc., 753 F.2d 1410, 1416 (7th Cir.1985), "when the claim on the merits is 'capable of repetition yet evading review,' and the named plaintiff's claim is mooted before the district court can certify the class, the case is not mooted."
 
 
 19
 The "capable of repetition, yet evading review" exception to mootness will apply when: "(1) the named plaintiff had a personal stake in the outcome of the controversy at the outset of the lawsuit; and (2) the claim may arise again with respect to that plaintiff." Id. at 1416-17. The "personal stake" requirement "serves primarily the purpose of assuring that federal courts are presented with disputes they are capable of resolving." Geraghty, 445 U.S. at 397, 100 S.Ct. at 1209. The reasoning behind requiring that the claim may arise again with respect to the named plaintiff is that "[s]ince the litigant faces some likelihood of becoming involved in the same controversy in the future, vigorous advocacy can be expected to continue." Geraghty, 445 U.S. at 398, 100 S.Ct. at 1209.
 
 
 20
 Plaintiffs argue that the two branches within the "capable of repetition, yet evading review" exception to mootness are (1) transitory conduct, and (2) voluntary cessation of the challenged conduct, and that they are independent branches. Plaintiffs do not contest the argument that receipt of SSNs by applicants is not inherently transitory. They do contend that the case is "capable of repetition under the voluntary cessation branch of that doctrine, and the case is not moot." Unfortunately, this is a misstatement of the "capable of repetition" doctrine. However, plaintiffs' concession that this is not an example of transitory conduct strengthens the Secretary's mootness claim. Sosna states that
 
 
 21
 the same exigency that justifies this doctrine serves to identify its limits. In cases in which the alleged harm would not dissipate during the normal time required for resolution of the controversy, the general principles of Art. III jurisdiction require that the plaintiff's personal stake in the litigation continue throughout the entirety of the litigation.
 
 
 22
 419 U.S. at 402, 95 S.Ct. at 559.
 
 
 23
 The SSN application requirements indicate that the denial of the requested SSNs is not of the transitory nature that would cause a claim to disappear before the district court could reasonably be expected to rule on class certification. Instead, an applicant's claim for a SSN is subject to the applicant's fulfillment of application requirements. Poe and Coe became able to satisfy the SSN requirements because Congress enacted IRCA and plaintiffs took action in accordance with IRCA, not because a certain amount of time had passed. Outside circumstances, not circumstances directly related to the Secretary's process of SSN assignment, caused plaintiffs' claims to become moot before certification of the class.
 
 
 24
 Plaintiffs contend that it is possible that plaintiff Poe will again face a scrambled earnings account problem, yet they concede that there has been no scrambled earnings problem since SSA settled the last problem. Plaintiffs also acknowledge that any change in procedure by SSA will not make a difference to Poe if he never receives another IRS notice, or has another unemployment compensation problem. The possibility that Poe may again face a scrambled earnings situation, or even that Coe could lose her duplicate SSN card and seek another, is not sufficient since "[t]he Court has never held that a mere physical or theoretical possibility was sufficient to satisfy the test" for capable of repetition, yet evading review. Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982). Instead, "there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." Id. These plaintiffs, having received the SSN relief they requested, are not likely to become involved in the same controversy in the future. The "capable of repetition, yet evading review" exception does not apply.
 
 B. Voluntary Cessation
 
 25
 Plaintiffs assert that the issuance of a new SSN to Poe and a duplicate SSN card to Coe is an example of voluntary cessation of the challenged conduct and that plaintiffs' claims are therefore not moot. True, "[i]t is well established that voluntary cessation of putatively illegal conduct ordinarily will not moot a controversy and prevent its adjudication by a federal court." Ragsdale v. Turnock, 841 F.2d 1358, 1364 (7th Cir.1988). However, as the Secretary argues, plaintiffs did not receive their SSNs because the Secretary changed the procedures plaintiffs are challenging, nor did the Secretary issue the SSNs in order to thwart plaintiffs' claims; rather, actions by the plaintiffs pursuant to IRCA resulted in their qualification for and receipt of their requested SSNs.
 
 
 26
 Although this is not a case of voluntary cessation by the Secretary, we note that "such cessation does render a controversy moot where there is no reasonable expectation that the putatively illegal conduct will be repeated, and there are no remaining effects of the alleged violation." Id. at 1365. See also County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). With respect to Poe and Coe, any chance that they will again seek a new SSN or duplicate card is speculative, and therefore there is no "reasonable expectation" that they will again be subject to the "no process" policy they challenge. In addition, because they received the relief requested--the new SSN and duplicate card--there are no remaining effects of the alleged violation as far as Poe and Coe are concerned.
 
 
 27
 The circumstances of this case--the independent action taken by plaintiffs, rather than any procedural changes by defendants--"[distinguish] this case from one in which a defendant attempts to avoid appellate review by voluntarily ceasing the challenged conduct without losing the ability to reinitiate the conduct once the mooted case is dismissed." Deakins v. Monaghan, 484 U.S. 193, 200 n. 4, 108 S.Ct. 523, 529 n. 4, 98 L.Ed.2d 529 (1988). This case is not an example of a situation requiring application of the voluntary cessation exception to the mootness doctrine.
 
 III. CONCLUSION
 
 28
 This case fails to satisfy the "capable of repetition, yet evading review," or voluntary cessation exceptions to mootness. It appearing, therefore, that the case is moot we VACATE the district court's decision and REMAND with instructions to dismiss.
 
 
 
 [1]
 On July 21, 1988, the district court certified the class as the following:
 All persons and the dependents and survivors (as defined in 20 C.F.R. Sec. 494.330 et seq.) of persons who:
 a. are residing, have resided, or will reside in Illinois, Indiana, Michigan, Minnesota, Ohio and Wisconsin subsequent to June 1, 1982; and
 b. are applying, have applied, or will apply for an initial SSN [social security number], a duplicate card, or a different SSN to correct a scrambled account; and
 c. are being denied, have been denied, or will be denied initial SSNs, duplicate social security cards, or different SSNs to correct a scrambled account; and
 d. have not subsequently obtained original SSNs, new SSNs or duplicate cards.
 
 
 [2]
 For example, an applicant who is an alien must produce an Alien Registration Receipt Card or Arrival-Departure Record. The applicant must also show whether he or she has work authorization. 20 C.F.R. Sec. 402.107(e)(1)
 
 
 [3]
 The Secretary has implemented, on a nationwide basis, a new SSN denial policy. We need not determine the sufficiency of this new procedure because of the mootness of the claims before this court
 
 
 [4]
 In its memorandum opinion and order granting plaintiffs' motion for summary judgment, the district court suggested that a form checklist of routine reasons for denial could serve as adequate notice of denial, along with written advice regarding resubmission of applications or the possibility of judicial review. The district court encouraged the parties to propose voluntary changes in the denial procedures, but after determining that those efforts were unproductive, issued the final judgment order containing the procedural changes the district court considered to be necessary
 
 
 [5]
 A Silva letter was issued to aliens who applied for immigrant visas before 1977. A court order in Silva v. Bell, 605 F.2d 978 (7th Cir.1979), prevented arrest or deportation of members of this class of aliens. A Silva alien had no work authorization
 
 
 [6]
 IRCA provided that as of May 5, 1987, aliens who had entered the United States as of January 1, 1982, and could prove continuous United States residency, were eligible for amnesty
 
 
 [7]
 SSA's first step in correcting scrambled earnings is to determine the true SSN holder. SSA then works to correct the earnings as recorded. SSA will endeavor to correct the matter to prevent recurrence. Usually this involves locating the individual improperly using the SSN and assigning that individual a new SSN. An earnings scramble does not entitle the true SSN holder to a new SSN as Poe contends--a new SSN may be issued, but the Secretary explains that this is done only as a last resort
 
 
 [8]
 In Robinson v. City of Chicago, 868 F.2d 959, 968 (7th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 756, 107 L.Ed.2d 773 (1990), we reiterated the Supreme Court's holding "that a class does not become a separate entity until it is certified and, in turn, that a class will not be certified unless the named plaintiff has standing at that time."
 
 
 [9]
 Plaintiffs contend that Poe's individual claim is not moot because he did not receive a new SSN specifically to correct his scrambled earnings account; yet plaintiffs concede that there has been no account problem since 1986. Plaintiffs argue that the appropriate question is not whether the individuals are entitled to SSNs, but whether they are entitled to a hearing to make such a determination. Plaintiffs also concede, however, that if Poe never receives another IRS notice or has another unemployment compensation problem, full process will not make a difference to Poe