**Marie BANKS, Plaintiff,**

v.

**SECRETARY OF THE INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION, et al., Defendants.**

**No. S91–340M.**

United States District Court,
N.D. Indiana,
South Bend Division.

April 2, 1992.

---

Kent Hull, Legal Services Program of Northern Indiana, Inc., South Bend, Ind., for plaintiff.

Wendy Stone Messer, Deputy Atty. Gen., Indianapolis, Ind., Clifford D. Johnson, Asst. U.S. Atty., South Bend, Ind., Barbara F. Altman, Dept. of Health and Human Services, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Marie Banks contends that Indiana's Medicaid procedures offend the Due Process Clause because they do not allow Medicaid recipients notice and an opportunity to contest denials of reimbursement of claims filed by their health care providers. Several motions in this cause are now before the court. The Secretary of the United States Department of Health and Human Services—the "federal defendant"—moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted. The Secretary of the Indiana Family and Social Services Administration—the "state defen-

dant"—moves to dismiss for failure to state a claim and for mootness.

Ms. Banks has filed a motion for conditional class certification pursuant to Fed. R.Civ.P. 23. She has also moved for an order striking the attachments to the federal defendant's reply brief in support of his motion to dismiss. In addition, Joan J. Smith has moved to intervene as a party plaintiff.

For the reasons that follow, the court concludes that the intervention motion should be granted, the motion for class certification should be denied, the motion to strike should be denied, and the state and federal defendants' motions to dismiss should be granted.

### I.

Marie Banks is the widow of Arthur Banks, a Medicaid recipient who received medical treatment from Radiology, Inc. before his death. Radiology submitted a Medicaid claim but the Indiana Department of Public Welfare (now Indiana Family and Social Services Administration), the state agency responsible for administering the Medicaid program, refused to reimburse Radiology. After Mr. Banks' death, Radiology won a small claims judgment against Mrs. Banks for unpaid medical bills in the amount of $567.00, plus costs, but the judgment was later vacated.

Mrs. Banks brought this action, claiming that Indiana's Medicaid program failed to provide her with written notice of its denial of Radiology's claims for payment or notify her of any right to contest its denial. She claims that the state defendant violated her right to receive Medicaid benefits secured by the United States Constitution, statutes, and federal rules. Mrs. Banks claims that the federal defendant violated the Due Process Clause of the United States Constitution, as well as federal statutes and rules, in failing to require the state defendant to comply with the law. Mrs. Banks seeks a declaratory judgment and mandatory injunctive relief against the state and federal defendants.

Joan J. Smith seeks intervention as a plaintiff and class representative pursuant to Fed.R.Civ.P. 24(b)(2), contending that her claim has a question of law in common with Mrs. Banks' claim. Mrs. Smith contends that she was hospitalized in St. Joseph's Medical Center during a period in which she was eligible for Medicaid. She alleges that the Medical Center submitted its claim, but Medicaid denied the claim, without notice to Mrs. Smith, as untimely submitted. A collection agency has filed suit against Mrs. Smith and her husband for $4,378.66 based on the Medical Center's bill, and Mrs. Smith has paid approximately $150.00 on the bill.

### II.

Fed.R.Civ.P. 23(c)(1) provides that, "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." The Seventh Circuit views this provision as requiring district courts to consider and decide issues of class certification before determining dismissal motions under Rule 12(b)(6). *Rutan v. Republican Party of Illinois*, 868 F.2d 943, 947 (7th Cir.1989), *aff'd in part, rev'd in part on other grounds*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Hickey v. Duffy*, 827 F.2d 234, 237 (7th Cir.1987); *Lorance v. AT & T Technologies, Inc.*, 827 F.2d 163, 165 n. 1 (7th Cir. 1987), *aff'd*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989). The court has explained the reasons for this requirement:

> The decision on certification should be made quickly. Both sides have an interest in prompt certification. To the extent the district courts thought certification unnecessary once they had ruled for the defendants, they were mistaken. *Vickers v. Trainor*, 546 F.2d 739, 747 (7th Cir.1976). A deferred ruling converts the class action to an opportunity for one-way intervention, which Rule 23 is designed to avoid.... The defendants have an interest in obtaining the preclusive effect of a certification, which prevent members of the class from bringing the same suit later on. The plaintiffs, who may appeal the denial of relief, also have an interest in knowing whether the

stakes on appeal include the interests of the whole class.

*Watkins v. Blinzinger,* 789 F.2d 474, 475–476 n. 3 (7th Cir.1986), *cert. denied,* 481 U.S. 1038, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987).

The curious procedural circumstances of this case make it awkward to determine the motion for class certification before addressing the motion to dismiss. To begin with, the defendants have opposed the certification motion, indicating a lack of interest in obtaining the preclusive effects of a dismissal motion following certification. Further, one defendant has raised a jurisdictional issue, and matters affecting the court's jurisdiction over a case also affect the court's jurisdiction over the motion for class certification. One defendant's dismissal motion was fully briefed, and the other's filed, before the plaintiff filed her class certification motion. Finally, several of the arguments raised with respect to class certification intertwine extensively with the arguments on the dismissal motions.

■ Nonetheless, the court cannot conclude that it is not yet practicable to determine the class certification motion at the outset. Courts may determine a certification motion and the case's merits simultaneously. *Jimenez v. Weinberger,* 523 F.2d 689, 698–699 (7th Cir.1975) (Stevens, J.), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976). The record before the court is ample for determination of both. Accordingly, the court turns first to the issue of class certification.

### A.

Mrs. Banks seeks certification under Fed.R.Civ.P. 23(b)(2). Such certification requires that a class representative satisfy the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Blake v. Arnett,* 663 F.2d 906, 912 (9th Cir.1981). As to the latter, Mrs. Banks contends that the defendants have acted or refused to act on grounds generally applicable to the class, making non-monetary relief with respect to the class as a whole appropriate; the defendants do not appear to dispute this point. Rule 23(a) requires plaintiff to show that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact are common to the class, (3) the representative parties' claims are typical of the claims of the class, and (4) the representative parties will protect the class' interests fairly and adequately. The state defendant challenges Mrs. Banks' showing on three of these requirements.

#### 1.

The state defendant principally argues Mrs. Banks' inadequacy as a class representative. Mrs. Banks' claim, the state defendant contends, is moot. The affidavit of Mike Aronson, a staff attorney for the state defendant,[1] demonstrates that Medicaid reimbursed Radiology on October 10, 1991 and that the small claims judgment against Mrs. Banks was vacated five days later. Mr. Aronson also states that Radiology would have been reimbursed sooner had it submitted the correct forms any time after providing services to Mr. Banks.

The state defendant claims that a case or controversy, which must exist at every stage of the proceedings, *Jones v. Sullivan,* 938 F.2d 801, 805 (7th Cir.1991), does not exist as to Mrs. Banks because of the October 1991 transactions. The state defendant argues that because Mrs. Banks cannot establish a case or controversy, she cannot seek relief on behalf of herself or any other member of the class. *Davis v. Ball Memorial Hosp. Ass'n, Inc.,* 753 F.2d 1410, 1420 (7th Cir.1985). If the claims expire before the class is certified, the claims are moot, *Jones v. Sullivan,* 938 F.2d at 805, and the small claims judgment against Mrs. Banks was vacated before the class was certified.

Mrs. Banks claims that the action is not moot because she has not obtained all the

---

**1.** As Mrs. Banks notes, the court should not consider affidavits and other material outside the pleadings in support of a motion to dismiss for failure to state a claim. However, such material may be considered in determining a Rule 12(b)(1) motion addressed to the court's jurisdiction, and Rule 23 does not limit the court to the pleadings.

relief she sought in bringing suit. The types of relief Mrs. Banks seeks against the state defendant include:

(1) Prohibiting the State Defendant from failing to provide written notice of, and opportunity to file administrative appeals contesting, the State Defendant's refusal to pay providers to members of the Plaintiff class.

(2) Prohibiting the State Defendant from following 470 I.A.C. 5–1–3 (1991 Cum.Supp.) to the extent that provision conflicts with the requirements of (1) above.

(3) Requiring the State Defendant to issue notice to her of its refusal to pay Radiology, Inc. for the services received by Mr. Banks, and to provide opportunity for hearing to contest that determination.

(4) Requiring the State Defendant to issue appropriate notice and to provide opportunity for hearing to all class members, similar to that required in (3) above.

Complaint, p. 12. Mrs. Banks submits that the state defendant's challenged policies still exist, notwithstanding the fact that the small claims action was vacated. She also notes that a dispute continues for her and for other members of the class she represents. Joan J. Smith, a member of the class, has moved to intervene and, Mrs. Banks claims, Ms. Smith would have standing to litigate any issue in which Mrs. Banks has no personal stake.

Leading cases indicate that a court should be reluctant to dismiss a case for mootness during the pendency of a class certification issue. *Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 331, 100 S.Ct. 1166, 1170, 63 L.Ed.2d 427 (1980) (courts should consider named plaintiffs' personal stakes and right to use Rule 23, named plaintiffs' responsibility to represent the putative class, class members' interests as potential intervenors, and district court's interests in protecting putative class members and in maintaining the integrity of the judicial process); *Susman v. Lincoln American Corp.,* 587 F.2d 866, 870 (7th Cir.1978), *cert. denied,* 445 U.S. 942, 100 S.Ct. 1336, 1337, 63 L.Ed.2d 775

(1980) (if certification was pursued with reasonable diligence, tender of individual money damages, while a factor to consider in determining named plaintiff's adequacy as class representative, does not defeat jurisdiction to consider the class certification motion; contrary rule would place every class action at defendant's mercy); *Griffith v. Bowen,* 678 F.Supp. 942, 946–947 (D.Mass.1988) (defendant's voluntary pre-certification payment of benefits to plaintiffs who had not sought benefits, without changing position, did not foreclose intervention by other putative class members).

Like the *Griffith* plaintiffs, Mrs. Banks brought her action to challenge the defendants' procedures. Like the *Griffith* defendant, the defendants have not changed their position as to the propriety of their procedures. The state defendant arranged to have Mrs. Banks' liability to Radiology, which generated this suit, vacated. By contrast, in *Jones v. Sullivan,* 938 F.2d 801 (7th Cir.1991), which the defendants cite, the court determined that the defendant's action of issuing social security numbers to the named plaintiffs mooted the controversy; legislation passed after the case was filed enabled the plaintiffs to obtain social security numbers, providing the plaintiffs with the relief they sought and eliminating any possibility of future recurrence. *Jones v. Sullivan,* 938 F.2d at 807. Mrs. Banks was not relieved of her liability to Radiology because of a change in legislation or procedures of which she could take advantage. Therefore, Mrs. Banks claims that this case is more like the situations in *Griffith* and *Susman.*

When "there is no chance that the named plaintiff's expired claim will reoccur, mootness still can be avoided through certification of a class prior to expiration of the named plaintiff's personal claim." *United States Parole Com'n v. Geraghty,* 445 U.S. 388, 398, 100 S.Ct. 1202, 1210, 63 L.Ed.2d 479 (1980). Although the certification motion was not pending at the time the Radiology judgment was vacated, Mrs. Banks had pursued class certification diligently and had moved for an extension of time within which to certify the class. She claims that her motion for an extension of

time, which was pending when the Radiology judgment was vacated, serves the same purpose as filing a motion to certify the class.

It appears to the court that Mrs. Banks has the better of the arguments summarized above: her claim was "mooted" by the state defendant's payment of the Radiology claim; as a Medicaid recipient herself, Mrs. Banks now faces the prospect that she will be unaware of the resolution of her own Medicaid claims.

Nonetheless, those concerns need not be resolved, because Mrs. Smith's motion to intervene provides a class representative whose claim has not been suggested to be moot. While the judgment against Mrs. Banks has been vacated, Mrs. Smith faces suit based on a similar claim. Although the federal defendant objected to Mrs. Smith's intervention motion, that objection addressed the sufficiency of her complaint, and not her right to intervene under Rule 24(a). Mrs. Smith's proposed complaint plainly poses questions of law in common with Mrs. Banks' claim, and her motion to intervene should be granted.

Accordingly, even if Mrs. Banks' claim were deemed to be moot, Mrs. Smith's claim places her in a position to serve as a class representative who will fairly and adequately protect the class' interests.

### 2.

■ As noted above, class certification also requires a sufficiently numerous class and typicality of the claims of the class and the representatives. The state defendant argues that Mrs. Banks' claim (and, presumably, Mrs. Smith's claim, which is similar to Mrs. Banks' claim) is not typical of a sufficiently numerous class. The court agrees.

The plaintiffs point to discovery requests indicating that seventy-five persons (a) received services from enrolled Medicaid providers whose claims for Medicaid reimbursement were denied and (b) received no written notice of the denials, thus falling within the description of the class contained in the complaint. As the state defendants note, however, the claims of Mrs. Banks and Mrs. Smith have an additional dimension: each was sued by the Medicaid provider. The plaintiffs have made no showing as to whether any other members of the class were so sued.

The plaintiffs suggest that the subsequent suits do not distinguish the Banks–Smith claims from others; if the Due Process Clause or federal regulations require notice, a lack of notice gives rise to a claim without respect to a subsequent suit by the provider. The court believes, however, that the existence of a subsequent suit is necessary to establish the injury-in-fact necessary to create a case or controversy under Article III of the United States Constitution. The subsequent suits by the Medicaid providers established the requisite injury-in-fact to Mrs. Banks (although perhaps fleetingly, in light of the subsequent vacating of the judgment) and Mrs. Smith. Absent any such showing with respect to other members of putative class, the court cannot find that the class is sufficiently numerous, or the class representatives' claims sufficiently typical, to support class certification under Rule 23(a)(1) and (3).

### B.

Accordingly, the court denies the plaintiffs' motion for conditional class certification.

### III.

Both defendants seek dismissal of the complaint for failure to state a claim upon which relief can be granted; the federal defendant also seeks dismissal of the claim for mandamus on the ground that the court lacks subject matter jurisdiction over such a claim.

The defendants' arguments are considered separately below, but each motion is based in some degree on laws that the defendants claim protect Medicaid recipients and their families from collection actions by health care providers. Under 42 C.F.R. § 447.15, providers must accept the Medicaid reimbursement they receive as payment in full in order for the state's Medicaid plan to comply with federal law.

IND.CODE 12–1–7–15.1(b) requires medical providers participating in the Medicaid program to file a provider agreement prohibiting the provider from requiring payment from the Medicaid recipient except where co-payment is required by law. IND.ADMIN.CODE tit. 470, r. 5–1–3(i) (1991) provides that:

> A Medicaid provider shall not collect from a Medicaid recipient or from the family of the Medicaid recipient any portion of his charge for a Medicaid covered service which is not reimbursed by the Indiana Medicaid program, except for co-payment and any patient liability payment as authorized by law.

The defendants claim that under these provisions, Mrs. Banks was never legally responsible for payment to Radiology (and, inferentially, that Mrs. Smith was never legally responsible for payment to St. Joseph Medical Center), and, therefore, she had no need for notice of, or right to appeal, Medicaid's denial of payment to the provider(s).

The federal government and participating states jointly finance the Medicaid program, which is codified as Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.* Each participating state determines which services to render and submits a plan that must comply with federal requirements set forth in 42 U.S.C. § 1396a and the federal regulations. Indiana is a Medicaid participating state. The Secretary of the Department of Health and Human Services is charged with approving state Medicaid plans. 42 U.S.C. § 1316. If the Secretary approves the state's plan, the state is entitled to reimbursement of a portion of the payments the state makes to medical providers who provide services to Medicaid recipients. If the Secretary finds that a state is not in compliance with its plan, the Secretary may withhold or limit federal funds from the state. Before doing so, the Secretary must afford the state reasonable notice and an opportunity to be heard. 42 U.S.C. § 1396c.

State plans must provide a Medicaid recipient notice and an opportunity to be heard when the recipient's claim for medical assistance is denied. 42 U.S.C. § 1396a(a)(3). The federal regulations hold that a recipient must be notified of the right to request a hearing "[a]t the time of any action affecting his claim." 42 C.F.R. § 431.206(c)(2). Such actions include "termination, suspension, or reduction of Medicaid eligibility or covered services." 42 C.F.R. § 201.

Payments made on behalf of Medicaid recipients usually are made directly to the medical providers. 42 C.F.R. § 447.10(d). As noted above, the medical provider must accept the payment from Medicaid as payment in full and may not seek additional payment from the Medicaid recipient.

### A.

The court turns first to its subject-matter jurisdiction. The federal defendant seeks dismissal because the complaint fails to show any act or omission on the federal defendant's part that affected the plaintiffs. The federal defendant also claims that there is no basis for granting a writ of mandamus against the federal defendant.[2]

---

**2.** The federal defendant attached to the reply brief several exhibits from the small claims file to demonstrate that Medicaid paid the Radiology claim and that Radiology, Inc. had the judgment against Mrs. Banks vacated. Mrs. Banks asks the court to strike these attachments to the brief because they are not authenticated and because they do not present the complete picture of the parties' negotiations related to the small claims action.

The federal defendant claims that these attachments are constructively incorporated by reference into the complaint, as the complaint identifies the small claims action and refers to several of the documents. Further, the federal defendant argues, if Mrs. Banks believes that the picture presented by the documents is incomplete, she should supplement the record with the balance of the small claims file, which is in her possession. The federal government also claims that Mrs. Banks has admitted the authenticity of the documents in her motion to strike.

That the judgment against Mrs. Banks was vacated supports the argument that the claim in this action is moot. However, the court need not determine whether the action is moot in determining considering the federal defendant's motion to dismiss, as the court finds that dismissal motion should be granted on other grounds. Therefore, the motion to strike should be denied as moot.

■ The plaintiffs' sole claim against the federal defendant is that "[t]he Federal Defendant has violated the statutes and rules cited in the previous claims, as well as the due process clause of the Fifth Amendment to the Constitution, in that he has failed to require the State Defendant to comply with the legal provisions set forth." Complaint, p. 11, ¶ 32. The legal provisions to which the complaint refers are the state and federal statutes and regulations governing Medicaid.

■ The federal defendant claims that the plaintiffs lack standing to bring this action against it because they do not meet the "case or controversy" requirement under Article III of the United States Constitution. To have standing, a party must show: (1) a direct and palpable injury; (2) that the injury can be fairly traced to the challenged action of the defendant; and (3) that the injury is likely to be redressed if the relief sought is granted. *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *Peoples Gas, Light and Coke Co. v. United States Postal Service,* 658 F.2d 1182, 1194 (7th Cir.1981). As the Supreme Court stated in *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978):

> The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr,* 369 U.S. 186, 204 [82 S.Ct. 691, 703, 7 L.Ed.2d 663] (1962). As refined by subsequent reformulation, this requirement of a "personal stake" has come to be understood to require not only a "distinct and palpable injury," to the plaintiff, *Warth v. Seldin* 422 U.S. 490, 501 [95 S.Ct. 2197, 2206, 45 L.Ed.2d 343] (1975), but also a "fairly traceable" causal connection between the claimed injury and the challenged conduct. *Arlington*

*Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 261 [97 S.Ct. 555, 561, 50 L.Ed.2d 450] (1977).

The federal defendant claims that the injury each plaintiff alleges to have suffered is her liability to a health care provider, and that this injury is not fairly traceable to any action by the federal defendant or, for that matter, to any action of the state defendant.

The federal defendant also claims that the plaintiffs cannot satisfy the requirement of showing that any ruling in their favor in this action will correct the injury they allege to have suffered. If the plaintiffs want to have the federal defendant compel the state defendant to comply with any terms of an injunction this court may issue, the federal defendant claims that it has no readily available means of ensuring the state defendant's compliance with an injunction. In addition, the court's contempt power should sufficiently ensure the state defendant's compliance with any order the court may issue. It appears that the only power the federal defendant has over the state defendant is the power to withhold Medicaid funds if the state defendant is found to be out of compliance with its Medicaid plan. Withholding of funds would not necessarily compel the state to comply with its plan.

The plaintiffs claim that the federal defendant's jurisdictional argument really is an extension of the argument that the complaint fails to state a claim, and that the issues in both arguments are intertwined.

Paragraph 6 of the complaint alleges that the federal defendant "is responsible for implementation of those provisions of the Social Security Act establishing Medicaid benefits...." The complaint also alleges that the state defendant violated federal regulations, 42 C.F.R. §§ 431.200 and 431.206, setting forth due process procedures for Medicaid recipients. The plaintiffs claim that the federal defendant has a duty to them to enforce the federal rules and that the court has jurisdiction to entertain challenges the federal defendant's administration of the Medicaid program.

With respect to the federal defendant, the plaintiffs request that the court issue "a writ of Mandamus or mandatory injunction to the federal defendant directing that he exercise appropriate supervision of the State Defendant to insure compliance by the Indiana Medicaid program with the legal provisions cited in the Causes of Action." Complaint, pp. 12–13, ¶ D.

The federal defendant claims that the plaintiffs do not state a cause of action in mandamus and do not invoke this court's subject matter jurisdiction pursuant to 28 U.S.C. § 1361.[3] "The common law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984). In *Homewood Professional Care Center, Ltd. v. Heckler*, 764 F.2d 1242, 1251 (7th Cir.1985), the Seventh Circuit set forth the requirements necessary to invoke mandamus jurisdiction:

> In this circuit, it is well-settled that mandamus jurisdiction may be invoked only when the following three elements are present:
>> "(1) a clear right in the plaintiff to the relief sought;
>> (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question;
>> (3) no other adequate remedy available."
> *Americana Healthcare Corp. v. Schweiker*, 688 F.2d 1072, 1084 (7th Cir. 1982), *cert. denied*, 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 434 [(1983)]. In *Americana Healthcare*, this court held that the mandamus remedy is only available "under *exceptional* circumstances of *clear illegality*. When the performance of official duty calls for a construction of governing law, the [federal] officer's interpretation will not be disturbed by a writ of mandamus unless it is *clear-*

*ly wrong* and his official action is arbitrary and capricious." *Id.* (Emphasis added). A mere mistake of law or an erroneous factual finding is not the type of clear-cut abuse of discretion or "usurpation of power" necessary for our use of the extraordinary remedy of mandamus. *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 217, 65 S.Ct. 1130, 1132, 89 L.Ed. 1566 (1945).

The federal defendant claims that the plaintiffs meet none of these requirements. If this action has merit, complete relief may be obtained from the state defendant. In *Rush v. Parham*, 625 F.2d 1150 (5th Cir.1980), the plaintiff sued state officials for denying Medicaid reimbursement for a surgery and the Secretary of Health and Human Services for approving a state plan that excluded the surgery from coverage. The Fifth Circuit dismissed the action against the federal defendant, concluding that the only basis for jurisdiction was mandamus jurisdiction, and the action lacked the elements of mandamus jurisdiction because the plaintiff had an adequate remedy against the state defendant. *Rush v. Parham*, 625 F.2d at 1154.

The federal defendant claims that the plaintiffs cannot show that the federal defendant owes them a plainly defined and peremptory duty to make the state defendant send Medicaid recipients notice of denial of payment to providers. The federal defendant cites a footnote in *Rush v. Parham*, 625 F.2d at 1154, n. 5, that stated that the federal officials probably do not owe Medicaid recipients a duty to disapprove a state medicaid plan that improperly denies the recipients benefits.

The plaintiffs claim that the Seventh Circuit has not adopted the *Rush* court's position. In *Holmes v. United States Parole Board*, 541 F.2d 1243, 1248 (7th Cir.1976), *overruled on other grounds sub nom. Solomon v. Benson*, 563 F.2d 339 (7th Cir. 1977), the court determined that the plaintiff was entitled to a writ of mandamus although there was an alternative remedy

---

**3.** The district courts shall have jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.
28 U.S.C. § 1361.

available. In two subsequent cases, however, the Seventh Circuit stated that mandamus may only issue when there is no other adequate remedy available. *Homewood Professional Care Center, Ltd. v. Heckler,* 764 F.2d 1242; *Americana Healthcare Corp. v. Schweiker,* 688 F.2d 1072, 1084 (7th Cir.1982), *cert. denied,* 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 434 (1983).

The federal defendants also cite *Davis v. Ball Memorial Hosp. Ass'n,* 640 F.2d 30, 44 (7th Cir.1980), in which the court determined that there was no jurisdictional basis to compel the Secretary to compel a facility to comply with federal law. The plaintiffs point out that the cited portion of the *Davis* decision determined that there was no private right of action against the Secretary under the Hill–Burton Act. The federal defendant claims, however, that several cases have determined that whether a private right of action may be implied under the Medicaid Act is a jurisdictional issue. *Illinois Health Care Ass'n v. Suter,* 719 F.Supp. 1419, 1427 (N.D.Ill.1989), for example, held that the Medicaid Act provided no express or implied private right of action against the Secretary of Health and Human Services. The court relied on the factors set forth in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), and *King v. Gibbs,* 876 F.2d 1275, 1281 (7th Cir.1989), for determining whether a right of action should be implied from a statute:

(1) Is the plaintiff a member of the class for whose benefit the statute was created?

(2) Is there an express or implied legislative intent to create such a remedy?

(3) Is it consistent with the purpose of the statute to imply such a remedy?

(4) Is the cause of action one generally relegated to state law, so that it would be inappropriate to imply a private right of action based on federal law?

The principal focus is on the second factor: legislative intent. *Illinois Health Care Ass'n v. Suter,* 719 F.2d at 1423. Noting the strong presumption against the cre-

ation of implied rights of action, the court stated:

Not surprisingly, (given the lack of an express remedy), nothing in the Act's language even hints at a right to sue the Secretary—it is silent as to suits of *any* kind. Nor does the legislative history suggest otherwise....

If anything, the legislative history characterizes Secretary's role as one that does not enmesh him in the details of the States' compliance with the Act. (S.Rep. No. 96–471, 96th Cong., 1st Sess., at 29 (1979))

*Illinois Health Care Ass'n v. Suter,* 719 F.2d at 1423–24 (emphasis in original). *See also Michigan Hospital Ass'n v. Dept. of Social Services,* 738 F.Supp. 1080 (W.D.Mich.1990).

The plaintiffs contend that a writ of mandamus is not the sole relief they seek; alternatively, they ask for a mandatory injunction. They ask the court to determine that the federal defendant owes them a duty to insure that the state defendant follows the federal regulations promulgated by the federal defendant. Had the federal defendant, in approving the state plan, insisted that the state provide notice and an opportunity to be heard when reimbursement was denied to her provider, Mrs. Banks would have had the remedy provided in *Easley.* For this reason, Mrs. Banks claims that her injury is fairly traceable to the federal defendant.

The plaintiffs further claim that they are entitled to a writ of mandamus or a mandatory injunction because the Medicaid rules and the Constitution establish a duty on the part of the federal defendant toward them. In *Estate of Smith v. Heckler,* 747 F.2d 583 (10th Cir.1984), the plaintiffs brought a class action claiming that the Secretary of Health and Human Services had a statutory duty to implement a system of monitoring nursing homes to insure that they provide the medical and psychosocial care to which Medicaid recipients are entitled under the Social Security Act. The district court found that the Secretary had no duty to require the use of such a system. The Tenth Circuit reversed, concluding that:

[T]he district court improperly defined the Secretary's duty under the statute. The federal government has more than a passive role in handing out money to the states. The district court erred in finding that the burden of enforcing the substantive provisions of the Medicaid Act is on the states. The Secretary of Health and Human Services has a duty to establish a system to adequately inform herself as to whether the facilities receiving federal money are satisfying the requirements of the Act. These requirements include providing high quality patient care. This duty to be adequately informed is not only a duty to be informed at the time a facility is originally certified, but is a duty of continuing supervision.

*Estate of Smith v. Heckler,* 747 F.2d at 589. The court also concluded that the court had jurisdiction over the action and that mandamus was an appropriate remedy. *Estate of Smith v. Heckler,* 747 F.2d at 591.

As the federal defendant notes, however, the Medicaid provisions at issue in this case differ from those at issue in *Estate of Smith v. Heckler.* In that case, the issue was whether the Secretary was required to determine that the quality of the health care provided to Medicaid recipients complied with federal standards. The court concluded that Congress intended that the Secretary be responsible for assuring that federal Medicaid funds go only to those institutions that meet federal standards. In the case at hand, there is no showing that Congress intended to provide Medicaid recipients with the type of notice that the plaintiffs seek, or that federal funds go only to states that provide such notice. There is no support for the assumption that the federal defendant owes the plaintiffs a duty to provide such notice, or that such notice would effectuate the purposes of the Medicaid program.

■ The federal defendant cites *Phoenix Baptist Hospital and Medical Center, Inc. v. United States,* 937 F.2d 452 (9th Cir. 1991), for the proposition that the Secretary has discretion as to whether to withdraw funding from a state Medicaid program for failure to comply with federal requirements. In *Phoenix Baptist,* the plaintiffs claimed that the United States negligently failed to withhold funds from a state Medicaid plan which failed to satisfy federal disclosure requirements. The court's determination that the Secretary had discretion to hold hearings on compliance and withhold federal funds defeated the court's subject matter jurisdiction, as the discretionary function exception to the Federal Tort Claims Act applied. This case does not involve the FTCA, but the federal defendant shows that mandamus is not an appropriate remedy where the Secretary has discretion to hold hearings on Medicaid compliance and withhold Medicaid funds.

The federal defendant has persuaded the court that the plaintiffs have not shown that any injury they suffered is fairly traceable to the federal defendant, or that any relief they seek against the federal defendant would redress their injury. Through the Medicaid regulations, the federal defendant already protects the plaintiffs from suits by medical providers. Accordingly, the court lacks subject matter jurisdiction over the claims against the federal defendant.

### B.

■ The state defendant seeks dismissal for failure to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of complaints that state no actionable claim. The complaint's factual allegations must be taken as true and viewed in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Rothner v. City of Chicago,* 929 F.2d 297, 302 (7th Cir.1991). Dismissal is appropriate if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Dresser Industries, Inc. v. Pyrrhus AG,* 936 F.2d 921, 933 (7th Cir.1991).

Incorporating many of the federal defendant's arguments concerning the complaint's sufficiency, the state defendant claims that the complaint pleads no facts from which it could be inferred that either the state defendant or the federal defendant deprived the plaintiffs of Medicaid benefits. Any injury Mrs. Banks or Mrs. Smith suffered was at the hands of health care providers that should not have sought payment from Mrs. Banks or Mrs. Smith. The defendants claim that the federal and state provisions safeguard the plaintiffs' interests by prohibiting providers from seeking additional payment, and that the defendants can do no more. The plaintiffs do not allege that the defendants participated in the health care providers' actions against them. If Radiology, Inc. or St. Joseph's Medical Center violated a Medicaid provision, it does not follow that the federal or state defendant did so.

The plaintiffs argue that the defendants' reliance on 42 C.F.R. § 447.15 is misplaced, because that provision immunizes Medicaid recipients from suits by providers only when Medicaid has agreed to cover the service provided, the recipient is eligible for Medicaid coverage, and Medicaid has made payment to the provider. The plaintiffs do not allege that the health care providers sued them for the balances of bills paid in part by Medicaid; they allege that Medicaid refused to reimburse the health care providers for services provided. Mrs. Banks also alleges that after Radiology secured a judgment against her, the local Medicaid agency acknowledged that "by some tragic mistake" the proper forms had not been sent to Radiology, and that Mr. Banks might have been eligible for Medicaid had the proper forms been sent. Mrs. Banks states that there was some question over Mr. Banks' eligibility for Medicaid coverage. In support, she points to paragraphs 12 and 15 of her complaint, which read as follows:

12. Prior to trial on July 13, 1989, the attorneys for Radiology, Inc. and Mrs. Banks attempted to ascertain whether or not the medical bills in question should have been paid by Medicaid. Prior to trial, the St. Joseph County Department of Public Welfare indicated that its review of Mr. Banks' file indicated that the bills in question did not qualify for Medicaid reimbursement.

\* \* \* \* \* \*

15. On July 18, 1989, Robert Van DenDriessche, Adult Medicaid Supervisor of the St. Joseph County Department, advised Mrs. Banks' lawyer that "by some tragic mistake" appropriate forms had not been sent to medical providers supplying services to Mr. Banks and that, in fact, he might have been eligible for Medicaid.[4]

The plaintiffs base their claim on the decision in *Easley v. Arkansas Dept. of Human Services*, 645 F.Supp. 1535 (E.D.Ark.1986). As in this case, the *Easley* plaintiffs were Medicaid recipients whose providers' claims were denied because of the providers' failure to comply with Medicaid's procedures or because the services provided were not covered. The providers did not attempt to refile their claims. The *Easley* plaintiffs were unaware of the denial of the claims until they received collection letters or summonses. The plaintiffs brought an action against the state agency responsible for administering Medicaid, contending that they were entitled to notice when their providers' Medicaid claims were denied. The district court agreed that the Due Process Clause required the state to provide notice and an opportunity to be heard in such cases.

---

4. Mrs. Banks claims that the reasons for Medicaid's refusal to reimburse Radiology are unclear, and that is why she seeks notice of such refusals. However, it appears from paragraph 15 of the complaint that Radiology was not paid initially because it did not have access to and submit the correct forms for reimbursement. Paragraph 16 alleges that Radiology agreed to resubmit the Medicaid claims after learning of the mistake; paragraph 17 alleges that payment was again refused. However, in her response to the federal defendant's motion to dismiss, Mrs. Banks acknowledges that Radiology's small claims judgment against Mrs. Banks was vacated on October 16, 1991. Mrs. Smith's intervention complaint alleges that her claim was denied because it was presented in an untimely manner. Therefore, in this case, unlike the *Stevens* case, there was no question that the providers' services were covered.

*Easley v. Arkansas Dept. of Human Services*, 645 F.Supp. at 1542. The court applied the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), for determining whether due process required this procedural safeguard.

This "balancing test" weighs three distinct factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and (c) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews* [, 424 U.S.] at 335 [96 S.Ct. at 903] ... When applying the first factor of *Mathews*, it is clear that these plaintiffs have a property interest protected by the United States Constitution.

... In balancing the second requirement of *Mathews*, i.e., an analysis of the risk of erroneous deprivation of that interest, along with the probable value of additional safeguards, the Court is persuaded by the plaintiff's arguments that if the defendant makes an erroneous decision that a claim ought to be denied, it has several adverse effects. The recipient rightfully assumes the claim was paid, budgets accordingly and forgets about it. Then, several months later, they get either a demand letter or a summons. A summons can have a devastating effect on a Medicaid recipient. The time, costs and hardships involved in defending the action is more than a lot of indigent, elderly recipients can bear. It affects the inherent trust required in the doctor-patient relationship. The recipient resents the provider suing them over a bill that probably should have been paid by the state. This is even more likely in cases of technical denials, in which the doctor's office failed to properly complete the claim form. Erroneous deprivation also has a chilling effect on recipients. They may not seek the medical care they need for fear of the financial burden it could create.

\*    \*    \*    \*    \*    \*

... The last criteria of *Mathews* is to determine the burden on the state that requiring compliance would entail.

\*    \*    \*    \*    \*    \*

... The fiscal and administrative burden placed upon the Department by implementing the statutorily and constitutionally required due process safeguards is insignificant when compared to the above-stated benefits to Medicaid recipients....

*Easley v. Arkansas Dept. of Human Services*, 645 F.Supp. at 1543–44. The plaintiffs assert that this court should find them entitled to the type of relief afforded the plaintiffs in *Easley*.

The plaintiffs also rely on the reasoning of *Stevens v. Dept. of Public Welfare*, 566 N.E.2d 544 (Ind.App.1991), in which the State Board of Public Welfare had denied reimbursement for nursing home services provided to a Medicaid recipient because the recipient was in a home that was inappropriate for her level of need, even though she was awaiting placement in a home at the appropriate level. The recipient filed a complaint, claiming that the denial of payment on the ground of inappropriate placement when appropriate placements were not available to the recipient violated the Social Security Act and the Due Process Clause. The trial court dismissed the action, concluding that because the recipient had not alleged that she had paid medical bills for the services not covered or that a claim had been demanded of her, no case or controversy existed. The trial court relied on the same state and federal regulations that the federal government cites in the case at bar, which provide that a medical provider must accept Medicaid reimbursement as payment in full and may not collect an additional charge from a recipient.

The Court of Appeals reversed, noting the distinction between seeking additional payment for covered services and seeking payment for services which Medicaid had determined were not covered.

Connie [the recipient] does not dispute that a Medicaid provider may not bill a recipient for covered services; however, she asserts that the services she received after June 30, 1988 were *not* covered services.... The services to Connie were not covered by Medicaid because she was not in an approved level of care facility; therefore, Connie believes she is liable for the services provided.

*Stevens v. Dept. of Public Welfare*, 566 N.E.2d at 549 (emphasis in original). The Court of Appeals further noted that the recipient could be liable for services provided under a *quantum meruit* theory. Therefore, there was a controversy to be decided, and the case should not have been dismissed.

■ According to the defendants, the plaintiffs' argument ignores the plain language of the state statute and the state and federal regulations that prohibit Medicaid providers from collecting from recipients. The federal defendant also asserts that *Easley* was wrongly decided insofar as it requires notice to recipients of actions taken on providers' claims. Due process requires notice and opportunity to be heard before a person is deprived of life, liberty, or property. The federal defendant argues that because liability could not attach against a Medicaid recipient in Mrs. Banks' situation, denial of the providers' claim deprives her of no property interest, and therefore no "predeprivation" notice is required.[5]

The court respectfully disagrees with the *Easley* decision that due process requires notice to a Medicaid recipient, along with a statement that the recipient is liable or not liable for the medical services, whenever a medical provider's claim is denied, so that the recipient can present the notice as evidence of nonliability in a subsequent suit by a medical provider. *Easley v. Arkansas Dept. of Human Services*, 645 F.Supp. at 1544–45. Because state and federal requirements forbid a medical provider from seeking reimbursement beyond that provided by Medicaid, the recipient risks no deprivation that must be preceded by notice and an opportunity to be heard. As the federal defendant's reply brief states:

> The *Easley* court's rationale, that Medicaid recipients ought not to be subject to spurious collections suits, 64[5] F.Supp. at 1543, begs the question in that the notice to recipients ... can do no more to prevent the filing of nonmeritorious lawsuits than the Secretary's regulation at 42 C.F.R. § 447.15. As the *Easley* court acknowledges, such a notice would merely constitute 'evidence of ... non-liability' that a recipient could submit in defense of 'an unwarranted collections lawsuit.' 645 F.Supp. at 1545.

Reply brief, p. 4, n. 2.

The complaint states no claim upon which relief can be granted and, accordingly, should be dismissed.

## IV.

For the foregoing reasons, the court hereby:

(1) GRANTS the motion to intervene filed by Joan J. Smith;

---

5. The federal defendant also notes that *Easley* did not involve a claim against the federal government, and argues that its holding should not be extended to the federal government. The federal defendant claims that even if the complaint states a claim against the state defendant, nothing supports joining the federal defendant in this action.

The court agrees; had the court not granted the federal defendant's Rule 12(b)(1) motion, it would grant the federal defendant's Rule 12(b)(6) motion. Although the plaintiffs were subjected to court actions, the actions were not due to the federal defendant's act or omission. If, as Mrs. Banks originally believed, Radiology's claim was denied because of Mr. Banks'

ineligibility for Medicaid coverage, Medicaid regulations already in place should provide Mr. Banks with notice and an opportunity to be heard. On the other hand, if, as it now appears, Radiology's claim was denied because the claim was submitted improperly, the state and federal statutes and regulations already in place protect Mrs. Banks against suit by the medical provider. Although Mrs. Banks could have benefitted from the type of notice required in *Easley*, in that she could have obtained the proper forms for Radiology to submit, *Easley* provides no support for requiring the federal defendant to require the state Medicaid agency to provide such notice.

(2) DENIES the plaintiff's motion for conditional class certification;

(3) DENIES the plaintiff's motion to strike;

(4) GRANTS the motion to dismiss filed by defendant Secretary of the United States Department of Health and Human Services; and

(4) GRANTS the motion to dismiss filed by defendant Secretary of the Indiana Family and Social Services Administration.

SO ORDERED.