710 F.2d 1292
 Roberto SANCHEZ & Jose Flores-Perez, on their own behalf and
on behalf of all others similarly situated,
Plaintiffs-Appellants,
v.
Jim EDGAR, individually and in his official capacity as
Illinois Secretary of State, et al., Defendants-Appellees.
 No. 82-2620.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 20, 1983.
Decided July 11, 1983.
 
 Bruce H. Bornstein, Freedman & Bornstein, Chicago, Ill., for plaintiffs-appellants.
 Mary Anne Mason, Frederic D. Tannenbaum, Asst. U.S. Attys., Chicago, Ill., for defendants-appellees.
 Before BAUER, NICHOLS,* and WOOD, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 In this appeal, we are called upon to decide under what circumstances an action complaining of unconstitutional treatment by federal and state agencies is moot when the specific action complained of has ceased but the plaintiff has alleged that the action was taken pursuant to a continuing official written policy. Under the circumstances present here, we find that the plaintiff's action was not moot, and consequently we reverse the district court's dismissal.
 
 I.
 
 2
 Plaintiff Sanchez filed this class action against the Illinois Secretary of State and federal Immigration and Naturalization Service officials on August 26, 1982, seeking declaratory, injunctive and monetary relief in connection with a violation of his constitutional rights under 42 U.S.C. Secs. 1981, 1985, 1986. His complaint alleged that, after his arrest by INS agents on August 19, 1982, his valid Illinois driver's license was not returned to him by the INS but was instead sent to the Illinois Secretary of State pursuant to an official written state policy requesting that all suspected illegal aliens' licenses be forwarded to that office, a policy which plaintiff claimed violated his right to due process and equal protection. Plaintiff's complaint was supported by an affidavit of one of his attorneys in which the latter stated that, upon being informed by plaintiff of the absence of his license after INS processing, he placed a phone call to the INS and spoke with an Agent Wofford who informed him that plaintiff's license had been sent to the office of the Illinois Secretary of State pursuant to a "memo" from that office requesting the confiscation and forwarding of the licenses of suspected illegal aliens; it was the policy of the INS, Wofford reportedly stated, to follow the dictates of this "memo."
 
 
 3
 At a hearing on plaintiff's emergency motion for a temporary restraining order, the federal defendants returned the plaintiff's license to him in open court and moved to dismiss the action as moot. In their motion to dismiss, the federal defendants represented that the plaintiff's license was not returned to him only due to an "oversight" rather than an "institutional policy" and that the license was in fact never sent to the office of the Illinois Secretary of State. Accompanying and noted in the motion was an affidavit of an INS Officer, Steve Henderson, who stated that he had processed plaintiff and that plaintiff's license had been misplaced under a stack of papers on his desk. Henderson further stated that plaintiff's license was never sent to the Illinois Secretary of State, and that it was not INS policy to do so. The state defendant was also granted leave to file a motion to dismiss the action as moot; the state incorporated in its motion the federal defendants' motion.
 
 
 4
 Prior to a hearing on defendants' motions to dismiss, plaintiff filed his First Amended Complaint adding an additional party plaintiff who alleged that his driver's license was confiscated by the defendants pursuant to the same policy and under the same circumstances as alleged in the initial complaint. The district court denied plaintiff leave to amend the complaint and dismissed the action as moot, explaining that
 
 
 5
 Plaintiff Sanchez's claim is now moot due to the return of his driver's license by the INS.... It is clear that the INS has no policy of summarily seizing driver's licenses of aliens under investigation. It is more clear that the Secretary of State of Illinois is not involved in this action at all.
 
 
 6
 Plaintiff appealed this dismissal, arguing, inter alia, that, even though his license had been returned to him, the case still presented a live controversy insofar as he alleged the continued existence of a joint INS-Illinois Secretary of State policy mandating seizure of the driver's licenses of suspected illegal aliens to which he might be still subject and insofar as he claimed damages from the deprivation of his driver's license for ten days. We agree.
 
 II.
 
 7
 The test for mootness is a stringent one, and it is well settled that mere voluntary cessation of allegedly illegal conduct by the defendant does not moot a case. United States v. Concentrated Phosphate Export Assn., Inc., 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968). If a governmental practice is capable of repetition, yet evades review due to the brevity of its duration or its apparent suspension, a live controversy still exists. Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); Nader v. Volpe, 475 F.2d 916, 917 (D.C.Cir.1973). The crux of plaintiff's allegation here is not only that his driver's license was confiscated but that it was confiscated and sent to Illinois officials pursuant to a written policy memorandum of the Illinois Secretary of State, a policy from which he sought prospective relief.[1] By way of contradiction, defendants merely assert that plaintiff's license was retained only by accident and that it is not INS policy to forward suspected illegal aliens' licenses to the Illinois Secretary of State. But this bald, competing representation does not, as the district court apparently concluded, terminate a live controversy. To the contrary, it sustains one; the plaintiff is entitled to prove that there is an ongoing policy of Illinois and INS to confiscate the licenses of a category of individuals to which he still belongs.
 
 
 8
 We note additionally that, with admirable candor, the Illinois Secretary of State has, after denying at oral argument on appeal the existence of a policy memorandum directing license confiscation, subsequently notified this court by letter that subsequent investigation has disclosed that such a state policy in fact does exist, although, he claims, this policy is not followed by the INS. This information further supports the conclusion that a live controversy exists,[2] for this court has expressly held that the continued existence of an agency's written authority to carry out a challenged policy, even if the agency has ceased to exercise it, saves the underlying challenge from mootness unless there is no reasonable likelihood that application of the policy will be resumed. Gallagher & Ascher Co. v. Simon, 687 F.2d 1067, 1071-72 (7th Cir.1982); Rabinowitz v. Board of Junior College District No. 508, 507 F.2d 1255, 1256 (7th Cir.1974). We cannot at this stage say that, despite defendants' representation that the newly acknowledged memorandum policy is not followed, there is no reasonable possibility that it will be applied to the plaintiff and his class at some future date. Plaintiff is entitled to a more extensive judicial forum to prove both the existence and continuing application of the challenged policy.
 
 
 9
 Even if we could ignore the evidence of the persistence of the allegedly unlawful policy of license seizure, however, the district court still would have erred in labelling plaintiff's action as moot, in view of plaintiff's outstanding claim for damages. Plaintiff claimed compensatory and punitive damages both from the violation of his constitutional rights and from the effective loss of the use of his automobile over the period during which the license was held by the INS. It is well settled that a viable claim for monetary relief, with the possible exception of a claim for only nominal or insubstantial damages, preserves the saliency of an action. Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 8-9, 98 S.Ct. 1554, 1559-1560, 56 L.Ed.2d 30 (1977); Loss v. Blankenship, 673 F.2d 942, 951 n. 11 (7th Cir.1982); 13 Wright, Miller & Cooper, Federal Practice and Procedure Sec. 3533 at 272-73 (1976). Neither the district court nor the defendants have characterized plaintiff's claimed damages as nominal, nor can we infer on this record that the damages sought will be more diminutive than a single household's claim for a month's utility overcharges which the Supreme Court found to prevent mootness in Craft. 436 U.S. at 9 n. 8, 98 S.Ct. at 1560 n. 8.
 
 III.
 
 10
 Finally, defendants argue that, even if plaintiff's action was not moot, it failed to state a claim upon which relief could be granted. Specifically, they argue that it is uncontroverted that plaintiff's license was never sent to the office of the Illinois Secretary of State, and hence the essential "wrong" is not even alleged to have occurred. But defendants err, for it is alleged in paragraph twenty-two of plaintiff's initial complaint that plaintiff's license was sent to the state defendant's office. Whether plaintiff's allegation can be fully substantiated by the evidence at trial is, of course, a different question; however, it is surely not "beyond doubt that the plaintiff can prove no set of facts in support of his claim." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957).[3]
 
 CONCLUSION
 
 11
 For the foregoing reasons, the district court's dismissal of this action is reversed and the case is remanded for further consideration, including the plaintiff's motion for leave to amend his complaint and his motion for class certification. By this procedural order this court intends to suggest no view of the merits. Circuit Rule 18 shall apply.
 
 
 12
 REVERSED AND REMANDED.
 
 
 13
 NICHOLS, Circuit Judge, concurring in the result.
 
 
 14
 I concur in the result.
 
 
 15
 The state's admission, made post argument, shows that the district judge decided the case under a possible misapprehension of fact. He must be allowed by reversal and remand an opportunity to evaluate the appellants' claims on the basis of the true facts.
 
 
 16
 Even before the state made its commendable and candid admission, it was apparent to me that the district court had committed mayhem upon Fed.R.Civ.P. 12 and 56. A motion to dismiss is converted to a motion for summary judgment as Rule 12(b) permits when the moving party relies on documents outside the pleading. As I understand Rule 56, the conversion of a motion to dismiss to one for summary judgment is automatic when a party supports his motion with affidavit or other material outside the pleading. Alabama v. Woody, 473 F.2d 10 (5th Cir.1973) says this is not so as to a suggestion of mootness. But that court gave the opposing party a chance to respond on the mootness issue anyway. I think it really was holding it did not have to allow discovery. But the court here entered summary judgment as Rule 56 allows without giving the opportunity and time for response that Rule 56 requires. The dismissal here was not on the ground of mootness alone, because of return of the license, but the court held the alleged policy to be and have been wholly a figment. He had, I think, quite understandably formed the impression that the suit was frivolous and tended to the harassment of high public officials. He misused the dictum in Butz v. Economou, 438 U.S. 478, 508, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978) as empowering him to cut corners in protection of persons with qualified immunity against frivolous litigation. This, I think, is a misreading of what our highest court intended. I think it meant that the rules, properly applied, were adequate to afford protection. Let us hope that this is correct.
 
 
 17
 I thought at oral argument that if we affirmed, it was going to have to be on the ground the error was harmless. This conclusion would have rested on the ground that plaintiffs' case rested entirely on unverified suspicions which they would need to depose high public officials in order to substantiate. They did not use their opportunity when asked at oral argument to show they had more. I, on the contrary, believe one of the uses of summary judgment is to cut off depositions of persons when such depositions would tend to harass and are not conducted upon a reasonable belief that they will lead to relevant evidence. Of course, it cannot be entered if there is a triable issue of fact, but in a proper case it can be entered despite bald assertions of the party that he may be able to establish such an issue if allowed to depose members of the adverse camp. The assertions must have the support of some reason to expect the depositions will lead to relevant evidence. Failure to enforce this often will lead to failures of summary judgment procedures to shorten the duration and control the cost of modern civil litigation as it should.
 
 
 18
 Now all is changed. It is reasonably apparent there is, or was, or may have been, some kind of policy to impound the driving licenses of persons suspected of being illegal aliens. Anyway, there was a memo dealing in some way with that subject. It was not contended that such a policy, if real, would have any warrant in law. Summary judgment is shown to have been premature. The fact finding court must not enter judgment again until the facts are clear. One still may hope some better way to establish the facts will be found than the fishing expedition the appellants desire. The state admits that a memo exists. It tells us nothing of what the memo says, or by whom, or to whom it was written. It would perhaps not have got appellants so far if its existence had not previously been denied.
 
 
 19
 Agent Wofford's purported telephone statement may not be barred as hearsay as against Wofford, who is said, however, to have had no other connection with the case. Before we assert it is admissible against other defendants who may have had something to do with the case, we should know what his authority was. This is the clear import of the rule. Or is he a co-conspirator?
 
 
 20
 I will pass over the mootness issue as I never would have affirmed on the ground of mootness.
 
 
 21
 As regards part III of the opinion, it is not correct that a party can rely in summary judgment upon his own pleading. See Rule 56. Possibly it was error to dismiss the complaint as against Wofford in view of his statement, but surely it does not or did not suffice to hold in the case all of the numerous persons named, independent of the state's recent admission.
 
 
 22
 The court's analysis of the case is flawed, in my view, but I agree that we must reverse and remand.
 
 
 
 *
 The Honorable Philip Nichols, Jr., of the United States Court of Appeals for the Federal Circuit, is sitting by designation
 
 
 [1]
 Defendants argue, and Judge Nichols has properly noted, that this allegation is based on INS agent Wofford's purported statement which is hearsay with respect to the INS and the state defendant and thus may not be admissible against them at trial. However, since the ruling here concerns whether the allegation establishes jurisdiction, an inquiry into the hearsay basis of the allegation would be premature at this time. Wright & Miller, 5 Federal Practice and Procedure Sec. 1364 at 670 (1969)
 
 
 [2]
 We note that a court may consider extrinsic matter bearing on a motion to dismiss for lack of jurisdiction without thereby converting that motion into one for summary judgment. State of Alabama ex rel. Baxley v. Woody, 473 F.2d 10, 12-13 (5th Cir.1973). Thus, while Judge Nichols is correct that part III of this order (analyzing the government's assertion that plaintiff failed to state a claim) could have been alternatively analyzed as a motion for summary judgment in view of the competing affidavits, such an alternative analysis would not be proper with respect to the mootness question
 
 
 [3]
 Judge Nichols points out that the question of failure to state a claim can be analyzed under the summary judgment standard, since competing affidavits were introduced, and the district court's order can be reversed through application of that standard as well. We agree