**PENNY SAVER PUBLICATIONS, IN-CORPORATED, an Illinois corporation, Plaintiff–Appellee,**

v.

**VILLAGE OF HAZEL CREST, an Illinois municipality, Defendant–Appellant.**

**No. 89–2624.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 15, 1990.

Decided June 14, 1990.

As Amended June 21, 1990.

Alan J. Mandel, James A. Klenk, Sonnenschein, Nath & Rosenthal, Chicago, Ill., for plaintiff-appellee.

John B. Murphey, Rosenthal, Murphey, Coblentz & Janega, Chicago, Ill., for defendant-appellant.

Before WOOD, Jr., COFFEY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Penny Saver Publications, Inc. ("Penny Saver") publishes a newspaper that is delivered to households free of charge in south suburban Cook County, Illinois, including the Village of Hazel Crest ("Hazel Crest" or "Village"). In 1983, Hazel Crest enacted a comprehensive fair housing ordinance (the "Ordinance") pursuant to a legislative finding that discriminatory acts and unfair housing practices threatened to deprive the Village and its residents of "the benefits of a stable, racially integrated community including the benefits of interracial, interreligious and intercultural associations." Hazel Crest, Il., Ordinance No. 9–1983 preamble (May 24, 1983). Section 14–32 of the Ordinance provided in pertinent part:

> No person shall solicit any owner or occupant of a dwelling to sell or rent or list for sale or rental such dwelling at any time after such owner or occupant has notified the Village Clerk that he does not desire to be so solicited.

Hazel Crest, Il., Ordinance § 14–32 (1983).

The Ordinance defined "solicit" or "solicitation" to mean "any conduct by a real estate agent or any employee or agent thereof intended to induce the owner of a dwelling within the village to sell, rent or list the same for sale or rental." *Id.*, § 14–27. The penalty for violating the Ordinance was a fine ranging from $100 to $500.

Donald Benkendorf, a real estate broker, subsequently placed a flyer in the Penny Saver advertising his real estate services. Several of the residents of Hazel Crest whose names were on the anti-solicitation list complained and Benkendorf was prosecuted under the Ordinance by the Village. The Circuit Court of Cook County first found him guilty under the Ordinance and later, upon reconsideration, found that the flyer was not a solicitation within the meaning of the Ordinance and accordingly reversed its finding of guilt.

Following the ruling in his favor, Benkendorf informed Penny Saver that he would no longer place advertisements in the publication for fear of further prosecution under the Ordinance. In May of 1985, a community newspaper quoted a village administrator stating that the state court decision was based on the "specific contents of the literature," and that only "this particular advertisement" did not constitute a violation of the Ordinance. The administrator also encouraged citizens to file more complaints if they felt the Ordinance had been violated. As a result, other organizations had similar reactions as Benkendorf to the Ordinance. For instance, the South Suburban Board of Realtors, an organization of realtors, analyzed the circuit court's decision and suggested that their members refrain from advertising in the Penny Saver. As a result real estate advertisers avoided that publication for fear of prosecution.

Penny Saver and Benkendorf filed separate suits challenging the Ordinance in the United States District Court for the Northern District of Illinois. The Benkendorf suit was before this Court in *Benkendorf v. Village of Hazel Crest,* 804 F.2d 99 (7th Cir.1986), where we held that the action for a preliminary injunction was moot and that his other claims were not yet properly before the court. Penny Saver's appeal is before us now.

In its complaint Penny Saver sought injunctive relief against the enforcement of the Ordinance as applied to advertisements in newspapers, declaratory relief that the Ordinance was unconstitutional and damages pursuant to 42 U.S.C. § 1983. Following hearings in the district court on Penny Saver's claim, Hazel Crest amended its definition of "solicitation" on April 22, 1986, to state that the term "shall not refer to communication carried out by means of

print or electronic media of general circulation such as a newspaper...." [1]

In June, 1986, the district court granted Penny Saver's motion for summary judgment and found the Ordinance was unconstitutionally vague. Despite the amendment, the trial court concluded the action was not moot because "the state court decision did not expressly find that the Ordinance does not cover advertisements in a general circulation ... and the village has expressed its continuing intent to prosecute mailings." The district court then denied the Village's motion to reconsider and, after a three day damages hearing, entered an order nunc pro tunc granting damages of $9,918.88 to Penny Saver for lost revenues. For the following reasons, we affirm the judgment of the district court.

## I.

Hazel Crest alleges on appeal that Penny Saver's claim is not justiciable. More specifically, it argues that in light of the state court decision that Benkendorf's flyer was not a solicitation, and the absence of any subsequent prosecutions or real threat of prosecutions under the Ordinance by the Village, any alleged "chill" of Penny Saver's advertisers was merely subjective. Accordingly, Hazel Crest argues, Penny Saver lacked standing to challenge the Ordinance because standing requires more than "allegations of a subjective 'chill.'" *Bigelow v. Virginia*, 421 U.S. 809, 816, 95 S.Ct. 2222, 2230, 44 L.Ed.2d 600 (1975). Hazel Crest also alleges that the Ordinance's amendment renders Penny Saver's claim moot.

■ In considering these allegations, we note that the district court was confronted solely with the constitutionality of the Village Ordinance as originally enacted. The amended Ordinance is presently under review by this Court in *South Suburban Housing Center v. Greater South Suburban Board of Realtors*, 713 F.Supp. 1068 (N.D.Ill.1988), *appeal docketed*, Nos. 89–

2115, 89–2112, 89–2123, and 89–2218 (7th Cir. argued Feb. 15, 1990), and we do not touch on its constitutionality in this decision. Because the Ordinance was amended to exempt newspapers, we find that the injunction sought by Penny Saver in this case is moot because the Ordinance, as amended, cannot be applied to Penny Saver.

■ This is not to say that Penny Saver's entire action is moot. Rather, Penny Saver still has a viable claim for declaratory and monetary relief. The fact that the Ordinance has been amended subsequent to the commencement of this case "does not moot plaintiff's claim for either declaratory or monetary relief." *Black v. Brown*, 513 F.2d 652 (7th Cir.1975) (new regulations adopted by prison officials do not moot declaratory or monetary claim on the original regulations). As the Supreme Court concluded in *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 109 S.Ct 706, 713, 102 L.Ed.2d 854 (1989), the expiration of an ordinance does not render the controversy moot because there still remains a live controversy between the parties as to whether the ordinance was unlawful thus entitling the plaintiff to damages. The Court has also previously stated "that voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). *See also Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 8–9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978) (respondent's claim for actual and punitive damages arising from termination of service saves this cause from the bar of mootness); *Powell v. McCormack*, 395 U.S. 486, 499, 89 S.Ct. 1944, 1952, 23 L.Ed.2d 491 (1969) ("A court may grant declaratory relief even though it chooses not to issue an injunction" because that claim is moot.)

■ The Village's assertion concerning standing is no more compelling. The dis-

---

1. Hazel Crest's reasons for amending the Ordinance are disputed by the parties. However, the district court judge in *South–Suburban Housing Center v. Bd. of Realtors*, 713 F.Supp.

1068, 1094 (N.D.Ill.1988), found that Hazel Crest "acted on advice of [its] trial counsel and amended the definition of solicitation contained in its ordinance."

trict court found Penny Saver had standing and we agree. The first element of the standing inquiry that Penny Saver "must satisfy in this Court is the 'case' or 'controversy' requirement of Art. III of the United States Constitution." *Secretary of State of Maryland v. J.H. Munson Co.*, 467 U.S. 947, 955, 104 S.Ct. 2839, 2846, 81 L.Ed.2d 786 (1983). The relevant inquiry for a case or controversy is to determine whether a plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). Penny Saver has brought an action seeking, *inter alia,* damages it suffered because of the "chilled" speech of its advertisers. This activity, the ability to advertise in its newspaper, is at the heart of the business relationship between Penny Saver and its real estate advertisers. When such activity is "chilled", Penny Saver is injured. The district court determined, that the advertisers speech was "chilled" because of the Ordinance and that Penny Saver was injured by the loss of advertising revenues. For these reasons, we conclude that Penny Saver has satisfied the requirement of alleging an injury-in-fact and has satisfied the case or controversy aspect of standing. *See Munson*, 467 U.S.at 958, 104 S.Ct. at 2847.

◼ In addition to the limitations on standing imposed by Article III's case or controversy requirement, there are also prudential considerations to standing. *Munson*, 467 U.S. at 955, 104 S.Ct. at 2846. "The plaintiff must [ordinarily] assert his own legal rights and interests, and cannot rest his claim to relief on legal rights or interests of third parties." *Id.* at 955, 104 S.Ct. at 2846 (citing *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). There are situations, however, where competing considerations outweigh any prudential limitations. *Munson*, 467 U.S. at 956, 104 S.Ct. at 2847.

Within the context of the first amendment, the Supreme Court has enunciated concerns that

justify a lessening of prudential limitations on standing.... [Particularly] when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged. 'Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'

*Munson*, 467 U.S. at 956–57, 104 S.Ct. at 2847 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973)). Based on this principle, we find that the prudential concerns of standing are outweighed by society's interest in having Penny Saver bring this action. Therefore, Penny Saver may still have standing regardless of whether it is complaining about its own first amendment rights.

◼◼ Accordingly, we turn now to the appropriateness of Penny Saver's declaratory and monetary award granted by the district court. In examining the district court's grant of summary judgment, we review the record and controlling law *de novo*. *Dribeck Importers v. G. Heilman Brewing Co.*, 883 F.2d 569, 573 (7th Cir. 1989). We begin with the underlying principles of law. First, constitutional violations may arise from the "chilling" effect of governmental regulations that fall short of a direct prohibition against the exercise of first amendment rights. *Laird v. Tatum*, 408 U.S. 1, 11, 92 S.Ct. 2318, 2324, 33 L.Ed.2d 154 (1972). Additionally, Penny Saver's prospective real estate advertisements, as paid commercial speech, are protected by the first amendment. *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975).

Based on these principles, Penny Saver challenged and the district court found the Village Ordinance was void for vagueness. It claimed that the Ordinance was so vague that realtors lacked notice as to what conduct may violate the Ordinance and thus

the realtors were "chilled" in their speech for fear of prosecution. Because of this "chill" Penny Saver alleges it was damaged by the amount of revenues it lost.

█ We agree with the district court and conclude that the Village Ordinance was unconstitutionally vague as applied to potential advertisers in newspapers of general circulation. If this Ordinance's provisions concerning solicitation are so vague that "men of common intelligence must necessarily guess at its meaning," *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926), then it is void for vagueness. "As a matter of due process, 'no one may be required at peril of life, liberty or property to speculate as to the meaning of … statutes. All are entitled to be informed as to what the statute commands or forbids.' The general test of vagueness applies with particular force in review of laws dealing with speech. 'Stricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech.'" *Hynes v. Mayor of Oradell*, 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976) (citations omitted).

We conclude that the Village's Ordinance was impermissibly vague because it failed to inform the advertisers of the specific conduct that would render them liable. It purported to regulate real estate solicitations yet failed to clearly define whether the Penny Saver's real estate advertisements were within the realm of the definition. This was compounded by the Village's enforcement practices. The Village had prosecuted Benkendorf for his advertising in the Penny Saver and stated its future intentions to actively enforce the Ordinance. Thus the advertisers were required to speculate as to the meaning of the Ordinance. *See Hynes*, 425 U.S. at 620, 96 S.Ct. at 1760. The language of the Ordinance did not provide the kind of precision which is required in statutes affecting first amendment interests and the extent of enforcement by the Village was unclear. *See Id.* at 620, 96 S.Ct. at 1760. Because of

this uncertainty, advertisers were apparently "chilled" in the exercise of their first amendment rights.[2] Rather than risk prosecution under the Ordinance, they relinquished advertising in the Penny Saver entirely. Accordingly, we hold, as did the district court, that the Village's Ordinance was unconstitutionally vague as applied to potential advertisers in newspapers.

█ We now turn to the question of damages. The Village contends on appeal that the district court's grant of damages to Penny Saver was inappropriate. In this respect, the Village merely recasts its earlier argument that any damages suffered are at most attributable to a subjective "chill" on the part of the advertisers, and accordingly, were not caused by the Village.

In addressing this issue, we note that "[a] district court's findings as to proof of damages are findings of fact which will not be set aside on appeal unless clearly erroneous." *Adams Apple Distributing v. Papelearas Reunidas*, 773 F.2d 925, 930 (7th Cir.1985). Penny Saver was injured every time an advertiser refrained from advertising in its publication because of the vague ordinance. The district court conducted a three day hearing on damages and concluded Penny Saver was injured by the Village in the amount of $9,918.88, its lost revenues under the Ordinance. We agree with the district court that the advertiser's fears were not subjective, but were the result of objective concerns over the vague ordinance. The damages were directly a result of the Village's actions and are amply supported by evidence in the record. For these reasons we find that the district judge's order granting damages was proper.

## II.

For the foregoing reasons, the order of the district court is AFFIRMED.

---

**2.** The first amendment "chill" and its consequential injury to Penny Saver also confers standing for an action based on a vagueness theory. *See Hynes,* 425 U.S. at 621 n. 5, 96 S.Ct. at 1761 n. 5.