Vernell Collins SMITH, Plaintiff,

v.

**KEYCORP MORTGAGE,
INC., Defendant.**

No. 92 C 7321.

United States District Court,
N.D. Illinois, E.D.

Feb. 25, 1993.

Daniel A. Edelman, Francine Schwartz, James Eric Vander Arend Edelman & Combs, Chicago, IL, for plaintiff.

Paul W. Schroeder, June K. Ghezzi, Jones, Day, Reavis & Pogue, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Plaintiff, Smith, resides in the home she owns in Chicago, Illinois. Defendant, Keycorp Mortgage, Inc., is a Maryland corporation with its principal place of business in New York. Defendant is one of the twenty largest mortgage servicers in the United States and services plaintiff's mortgage.

Plaintiff's three-count complaint seeks class certification and claims violation of the Bankruptcy Code, 11 U.S.C. § 1322, and the terms of confirmed Chapter 13 plans. Count two claims unfair and deceptive practices under applicable state consumer fraud statutes. Count three of the complaint seeks restitution and equitable relief. Plaintiff has also filed a motion for preliminary injunction. Defendant has filed memoranda in opposition to class certification and the preliminary injunction motion. Defendant has also filed a motion to dismiss the complaint for failure to state a claim, Fed.R.Civ.P. 12(b)(6), and for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1).

According to the complaint, plaintiff encountered financial difficulties in 1987, falling $3,000 behind in her mortgage payments. In April 1987, plaintiff filed a Chapter 13 proceeding in the United States Bankruptcy Court, Northern District of Illinois, 87 B 5518, proposing for the payment of both arrearages and current mortgage payments through a trustee. This plan was confirmed by the bankruptcy court on July 21, 1987. Each of the 58 post-petition payments contemplated by the plan were made by the trustee. Nonetheless, late charges of $15 to $20 were charged on each post-petition payment under a policy and practice of defendant.[1] Plaintiff was not notified of the charges until after she had successfully completed her Chapter 13 plan on July 14, 1992. On May 22, 1992, defendant received a standard form letter from the trustee informing it that the mortgage had been paid through May 1992 and that the mortgagor would resume making regular payments the following month. Immediately thereafter, defendant asserted that plaintiff's account was not current because of the late charges, declared her loan in default and refused to accept current mortgage payments which plaintiff tendered. Plaintiff's bankruptcy attorney then notified defendant that additional amounts due during the pendency of the plan should have been claimed in the Chapter 13 proceeding and that the declaration of default because of late charges accruing during the pendency of the plan was unlawful.

On November 3, 1992, after receiving plaintiff's bankruptcy counsel's letter, defendant's foreclosure attorney sent plaintiff a letter accelerating her mortgage and threatening foreclosure. Plaintiff filed this suit the following day. On November 24, 1992, defendant changed its posture and assured plaintiff by letter that she was not delinquent, owed no late charges and that foreclosure proceedings would be dropped. Defendant characterizes what occurred as an isolated and inadvertent mistake on the part of one of its bankruptcy processors. Plaintiff claims defendant has a policy and practice of assessing late charges while mortgagors are in Chapter 13 proceedings, even though such charges are not lawful under the Bankruptcy Code or the individual Chapter 13 plan, and of trying to collect the charges once the plan is complete and no longer under the supervision of the trustee.

### CLASS CERTIFICATION

Plaintiff argues a class should be certified under either Fed.R.Civ.P. 23(b)(2) or (b)(3). In general, the class certification determination should be made "[a]s soon as practicable after the commencement of [such] an action." Fed.R.Civ.P. 23(c). Whether the case should proceed as a representative action must be determined promptly and "without regard to the virtues of the plaintiffs' legal theory." *Koch*

---

1. The late charges occurred because the payment schedule under the Chapter 13 plan differed from the original mortgage schedule.

*v. Stanard,* 962 F.2d 605, 607 (7th Cir. 1992).[2]

■ Defendant argues that dismissal of plaintiff's individual action for failure to state a claim warrants dismissal of the class claims. In support, defendant cites cases where the court determined that the representative party failed to allege injury and, lacking standing individually, could not bring a class action. *See Mintz v. Mathers Fund, Inc.,* 463 F.2d 495, 498 (7th Cir.1972); *Drury v. Horizon Savings Bank, F.S.B.,* 762 F.Supp. 235, 239 (N.D.Ill. 1991). These cases are inapposite. Defendant's argument that plaintiff has failed to state a federal or state claim is not the same as arguing that plaintiff lacks standing. The Supreme Court has noted that the concepts of jurisdiction, standing, and implications of a private cause "overlap ... even more than they ordinarily would" in cases involving implied rights of action. *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 456, 94 S.Ct. 690, 692, 38 L.Ed.2d 646 (1974). However, "[t]he requirement of standing 'focuses on the party seeking to get [her] complaint before a federal court and not on the issues [she] wishes to have adjudicated.'" *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 484, 102 S.Ct. 752, 765, 70 L.Ed.2d 700 (1982) (quoting *Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968)). "The focus of cause of action inquiry must not be confused with standing—it does not go to the quality or extent of the plaintiff's injury, but to the nature of the right asserted." 13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3531.6 at 500 (1984) (citing *Davis v. Passman,* 442 U.S. 228, 239–40 n. 18, 99 S.Ct. 2264, 2273–74 n. 18, 60 L.Ed.2d 846 (1979)) [hereinafter Federal Practice and Procedure]; *see also id.* at 480–81 n. 38 (even if it were finally concluded damages were not available to plaintiff seeking damages on behalf of class, standing should not depend on ultimate determination of whether his personal claim was valid). The "core component" of standing is "derived directly from the Constitution. A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Plaintiff here alleges several injuries in fact, caused by defendant which might be remedied by the damages sought. *Ogden v. United States,* 758 F.2d 1168, 1177–78 (7th Cir.1985).

■ Defendant also argues that plaintiff's claims and those of the class are moot. Defendant bases this argument on its allegation that it acted promptly to retract its notice of intent to foreclose upon learning of its own bankruptcy processor's error.[3] *See Jones v. Sullivan,* 938 F.2d 801, 806–07 (7th Cir.1991). "Article III of the Constitution requires that an actual 'case' or 'controversy' ... exist, 'not only at the date the action is initiated, but at every stage of the trial and appellate proceedings.'" *Id.* at 805 (citing *Foster v. Center Township of LaPorte County,* 798 F.2d 237, 245 (7th Cir.1986)). The Seventh Circuit has distinguished cases in which voluntary cessation moots a controversy because there is no reasonable expectation that the putatively illegal conduct will be repeated, *see Los Angeles County v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); *see also United States v. W.T. Grant Co.,* 345 U.S. 629, 632–33, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); *Magnuson v. City of Hickory Hills,* 933 F.2d 562, 565 (7th Cir.1991), from cases in which a defendant attempts to avoid review by voluntarily ceasing the challenged conduct without losing the ability to reinitiate the conduct once the mooted case is dismissed. *Jones,* 938 F.2d at 807. Because of this distinction, the *Jones* court rejected plaintiff's "capable of repetition,

---

**2.** District courts must not delay certification on the belief that "the case is doomed on the merits." *Koch v. Stanard,* 962 F.2d at 607.

**3.** Defendant's argument is questionable. Plaintiff notified defendant of the error prior to the foreclosure threat and only after this suit was filed, did defendant "discover" the mistake.

yet evading review" and "voluntary cessation" defenses to the mootness argument.[4] In this case, defendant has written plaintiff acknowledging an error, waiving its right to collect the late charges, and has accepted plaintiff's tendered payments, making the mortgage current and the injunction and declaratory relief claims moot.[5]

Damages claims, however, usually defeat mootness as they present a live controversy that should be determined on the merits. *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 478 n. 1, 109 S.Ct. 706, 713 n. 1, 102 L.Ed.2d 854 (1989); *Penny Saver Pubs., Inc. v. Village of Hazel Crest*, 905 F.2d 150, 153 (7th Cir.1990); *see generally* 13A Federal Practice and Procedure § 3533.3 (1984). Plaintiff seeks punitive damages. At least two circuits have held that punitive damage claims defeat mootness. *See Washington v. James*, 782 F.2d 1134, 1137 & n. 2 (2d Cir.1986) (although injunctive relief mooted, punitive and nominal damages survived); *Cochetti v. Desmond*, 572 F.2d 102, 104–05 (3d Cir. 1978) (claim for punitive damages must be disposed of on the merits); *see also Forys v. United Food & Commercial Wkr's Int'l Union*, 829 F.2d 603, 604 n. 2 (7th Cir. 1987). Although a claim for only nominal damages "implies a ruling that the wrong is worthy of vindication by an essentially declaratory judgment ... [a] valid claim for nominal damages should avoid mootness." 13A Federal Practice and Procedure § 3533.3 at 265–66. Therefore, plaintiff may have standing to seek damages, but not to seek injunctive relief. *See City Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (although defendant had standing to seek damages, he lacked standing to seek an injunction prohibiting chokehold); 13 Practice and Procedure § 3531.6 at 483–86.

Plaintiff may maintain this action on behalf of the represented class only if she satisfies the requirements of Fed. R.Civ.P. 23(a) and 23(b). Rule 23(a) requires, *inter alia*, that the class be so numerous that joinder of all members is impracticable. Plaintiff has the burden of establishing that the requirements of Rule 23 have been met and that the case is appropriate for class-wide adjudication. *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir.1984); *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir.1977). "It is axiomatic that for a class action to be certified a 'class' must exist." *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir.1981). "Of course, if there are no members of the class other than the named representative[ ], then Rule 23(a)(1) obviously has not been satisfied." 7A Federal Practice and Procedure § 1762 at 154.

Plaintiff argues that a class exists and that it appears that the number of class members exceeds the minimum required for certification. *Riordan v. Smith Barney*, 113 F.R.D. 60 (N.D.Ill.1986) (10–29 members sufficient). In support, plaintiff alleges that defendant is one of the largest servicers of residential mortgages in the United States and that just one of the two standing Northern District of Illinois Chapter 13 trustees has informed plaintiff that defendant is listed as defendant in 159 of the trustee's cases. Plaintiff argues that these facts reasonably indicate that "the number of persons subjected to the practice at issue in this litigation is in the hundreds or low thousands." Pl.'s Mot. for Class Cert. at 9. However, plaintiff does not name one other person subjected to the same treatment even though plaintiff alleges that the action is the normal policy and practice of defendant. Mere conclusory allegations of numerosity and speculation as to class size are not sufficient. *Marcial v. Coronet Ins. Co.*, 122 F.R.D. 529, 531 (N.D.Ill.1988), *aff'd*, 880 F.2d 954 (7th Cir.

---

4. In *Jones*, plaintiffs sought declaratory and injunctive relief only. 938 F.2d at 803.

5. This case is also distinguishable from *Barnes v. Healy*, 980 F.2d 572 (9th Cir.1992) and *Sanchez v. Edgar*, 710 F.2d 1292, 1295 (7th Cir. 1983), cited by plaintiff. In those cases, defendants' mootness arguments were rejected be-

cause defendants still had the ability to change their minds and revert to the allegedly illegal position with respect to the named plaintiffs. *See also Banks v. Secretary of the Indiana Family and Social Svcs. Admin.*, 790 F.Supp. 1427, 1431 (N.D.Ind.1992).

1989) (plaintiff failed to show numerosity). "[A] plaintiff cannot satisfy the numerosity requirement without showing that some other person besides himself is similarly situated." *Perez v. Personnel Bd. of Chicago,* 690 F.Supp. 670, 672 (N.D.Ill.1988); *accord Makuc v. American Honda Motor Co., Inc.,* 835 F.2d 389, 394–95 (1st Cir. 1987); *Jamerson v. Board of Trustees of Univ. of Alabama,* 662 F.2d 320, 325 (5th Cir.1981); *Mazus v. Department of Transportation,* 629 F.2d 870, 876 (3d Cir.1980); *Doctor v. Seaboard Coast Line R. Co.,* 540 F.2d 699, 709 (4th Cir.1976). Therefore, plaintiff's motion for class certification will be denied.

### MOTION TO DISMISS

■ Defendant has moved to dismiss plaintiff's complaint. On a motion to dismiss, all well-pleaded factual allegations are accepted as true and are construed in favor of plaintiff. *Roots Partnership v. Lands' End, Inc.,* 965 F.2d 1411, 1416 (7th Cir.1992). "Dismissal of the complaint is proper only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief' as where a complaint fails to allege an essential element of plaintiff's claim." *Id.* The court need not ignore, however, facts alleged in the complaint that undermine the plaintiff's claim. *Id.*

Defendant's motion to dismiss argues that plaintiff has failed to state a claim under the Bankruptcy Code or her individual Chapter 13 plan. In Count I, plaintiff alleges that defendant's practice of assessing late charges is inconsistent with § 1322 of the Bankruptcy Code in that it effectively results in the Chapter 13 plan not curing the debtor's default, thwarting the purpose of that chapter. 11 U.S.C. § 1322. Defendant argues that there is no private right of action under § 1322 or under a Chapter 13 plan. Section 1322 of the Bankruptcy Code does not expressly provide for a private right of action.

■ A right of action will not be implied unless a plaintiff can show (1) she is one of the class for whose special benefit the statute was enacted; (2) explicit or implicit legislative intent to create such a remedy or deny it; (3) a private right of action is consistent with the underlying purposes of the legislative scheme; and (4) the cause of action is not one traditionally relegated to state law. *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975). Plaintiff certainly is a member of the class Congress meant to benefit by the Bankruptcy Act. However, each of the *Cort v. Ash* factors are not entitled to equal weight. *Ryan v. Ohio Edison Co.,* 611 F.2d 1170, 1177 (6th Cir.1979). "The central inquiry for the court remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Id.* (citing *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)); *see Spicer v. Chicago Bd. Options Exchange,* 977 F.2d 255, 258 (7th Cir.1992).

■ The Bankruptcy Code is a comprehensive system. When Congress wanted to provide a private cause of action under the Bankruptcy Code, it did so expressly. *See, e.g.,* 11 U.S.C. § 362(h) (effective 10/10/84, private right of action for willful violation of automatic stay). *See Touche Ross,* 442 U.S. at 571–72, 99 S.Ct. at 2486–87 (presumption against private remedy when other section provides remedy). *But see Herman & MacLean v. Huddleston,* 459 U.S. 375, 387 n. 23, 103 S.Ct. 683, 689 n. 23, 74 L.Ed.2d 548 (1983) (rejecting presumption). Plaintiff is correct in asserting that a federal court may adjudicate the effect of a Chapter 13 plan on a debtor's obligations. In support, plaintiff cites numerous bankruptcy cases involving discharged debt claims. *See In re Conway,* 126 B.R. 28 (Bankr.D.Del.1991) (injunction from post-petition Chapter 13 debts); *In re Rathe,* 114 B.R. 253 (Bankr.D.Idaho 1990) (enjoined collection of post-petition Chapter 13 debts); *In re Elias,* 98 B.R. 332 (N.D.Ill. 1989) (Chapter 7 contempt for attempted collection of post-petition debts); *In re Torres,* 117 B.R. 379 (Bankr.N.D.Ill.1990) (Chapter 7 contempt); *Behrens v. Woodhaven Ass'n,* 87 B.R. 971 (Bankr.N.D.Ill. 1988), *aff'd,* No. 88 C 8855, 1989 WL 47409 (Bankr.N.D.Ill., March 8, 1989) (Chapter 7

contempt); *In re Hackney*, 20 B.R. 158, 159 (Bankr.D.Idaho 1982). However, plaintiff is not seeking to adjudicate whether the late charges sought by defendant were discharged by the Chapter 13 plan. Plaintiff claims that defendant's action, seeking payment of the late charges, is itself a violation of the Bankruptcy Code and the Chapter 13 plan. Although the federal district court "may issue any order, process or judgment that is necessary and appropriate to carry out the provisions of this title," 11 U.S.C. § 105(a), this general provision does not of itself create a private right of action for any action contrary to the purpose of Chapter 13.

In a very similar case, a bankruptcy debtor brought a class action against a creditor seeking damages and injunctive relief from defendant's debt collection efforts which where in violation of the discharge provisions of the Bankruptcy Act and rules. *Ryan v. Ohio Edison Co.*, 611 F.2d at 1171. The Sixth Circuit affirmed the district court's dismissal for failure to state a claim. *Id.* The *Ryan* plaintiff argued that Ohio Edison's attempt to collect a discharged debt through informal debt collection measures violated § 14(f)(2) (subsequently amended) of the Bankruptcy Act. That section mandated that orders of discharge enjoin all creditors from "employing any process to collect [discharged] debts." *Ryan v. Ohio Edison Co.*, 611 F.2d at 1172. After an exhaustive review of the legislative history, the court determined that there was no express right of action because the section's language, "any process," only prohibited formal legal action, not informal collection efforts, on discharged debts. The *Ryan* court then rejected plaintiff's argument that a private right of action should be implied to further the basic purpose of the Bankruptcy Act in the absence of any congressional intent to do so. *Id.* at 1176–77.

The Bankruptcy Code provisions relied on in the instant case more clearly lack any intention to create a separate right of action for plaintiff.[6] Section 1322 lists the provisions which a Chapter 13 plan must and may have. 11 U.S.C. § 1322. Subsection (b)(5) of that section states that the plan "may" provide for the curing of any default (including a mortgage default) within a reasonable time and maintenance of payments while the case is pending. Section 1327(c) provides that property vesting in the debtor after confirmation is "free and clear of any claim of interest of any creditor provided for by the plan." Plaintiff may have stated a claim for injunctive or declaratory relief under her Chapter 13 plan. However, her claims for declaratory or injunctive relief are at this point moot. *See supra Class Certification.* Plaintiff has cited no authority suggesting that defendant's action, however unjustified, was intended by Congress to be actionable for damages under § 1322 of the Bankruptcy Code or a Chapter 13 plan.

Plaintiff also argues that, because her bankruptcy case is closed, any district court, including this one, has the power to grant relief under 11 U.S.C. § 105(a). Since bankruptcy judges' authority is conferred by the district court, plaintiff argues, and this matter is no longer pending in the bankruptcy court, this court is the proper forum to challenge violations of the plan. However, plaintiff's own argument proves too much. Plaintiff also argues that "[j]urisdiction to enter orders and judgments necessary to carry out the provisions of Title 11 continues even after a bankruptcy case is closed." Pl. Resp. at 6; *see In re Churchfield Management & Investment Corp.*, 122 B.R. 76, 80 (Bankr. N.D.Ill.1990). Plaintiff is not attempting to adjudicate the discharge of her debt in the bankruptcy court that handled her Chapter 13 plan. Rather, plaintiff sues defendant under what she considers a substantive right of action granted under the Bankruptcy Code and the Chapter 13 plan, for defendant's unlawful *attempt* to collect the discharged debt.

Citing *Transamerica Mtge. Advisors v. Lewis*, 444 U.S. 11, 18–19, 100 S.Ct. 242,

---

**6.** Subsequent to the actions in *Ryan*, Section 14(f) of the Bankruptcy Act was revised in the new Bankruptcy Code to specifically include injunction of both formal legal and informal collection efforts. 611 F.2d at 1175.

246, 62 L.Ed.2d 146 (1979), plaintiff argues that the Bankruptcy Code's provisions for the "curing" of default under § 1322(b)(5) and for vesting clear title under § 1327, surely contemplate litigation of those issues in federal court. In *Transamerica*, the Court held that a statute providing that a contract is "void" necessarily contemplates that the issue of "voidness" may be litigated somewhere and it would be anomalous to hold that Congress created a federal right, but intended vindication only in the state court. *Id.* at 19 & n. 8, 100 S.Ct. at 246 & n. 8. However, the *Transamerica* Court held that certain provisions of the Investment Advisors Act did *not* confer a private right of action. "In view of [the] express provisions for enforcing the duties imposed by [that section, the Court noted] it is highly improbable that 'Congress absentmindedly forgot to mention an intended private action.'" *Id.* at 20, 100 S.Ct. at 247. Plaintiff has not shown that these provisions of the Bankruptcy Code were intended to create any right of action beyond merely adjudicating the debt in Bankruptcy Court. Plaintiff's claims for declaratory and injunctive relief are moot and she has failed to state a federal claim for damages under the Bankruptcy Code or her Chapter 13 plan.

■ Neither party briefed the issue of whether the automatic injunction provision of 11 U.S.C. § 524(a) (prohibiting attempts to collect certain discharged debts) provides a cause of action for civil contempt and damages. Case law suggests the injunction provision is not applicable to the § 1322(b)(5) debts involved in this case because such debts are not discharged. *See In re Harvey*, 88 B.R. 860, 861–63 (Bankr. N.D.Ill.1988); *see also Behrens v. Woodhaven Ass'n*, No. 88 C 8855, 1989 WL 47409 *2 (Bankr.N.D.Ill. March 8, 1989). Under Chapter 13, § 1322(b)(5) provides for the cure of default on residential loans extending beyond the plan period, and does not discharge the debt. *Harvey*, 88 B.R. at 861–63. Therefore, the injunction provision of § 524(a) does not provide a contempt action for damages in this case.

■ Plaintiff argues that even if it were necessary to rely on Illinois consumer fraud law for the existence of a cause of action, that this court would nevertheless have federal jurisdiction under 28 U.S.C. § 1331 because the resolution of plaintiff's claims necessarily requires construction of a federal statute. But for the default-curing provision of § 1322, plaintiff argues, she would have no cause of action. Plaintiff urges that this lawsuit presents a federal question because a "substantial federal question" is inherent in the case. A complaint alleging a violation of a federal statute as an element of a state cause of action, where Congress has determined there is no private federal cause of action for the violation, does not come within federal question jurisdiction. *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 817 & n. 12, 106 S.Ct. 3229, 3236 & n. 12, 92 L.Ed.2d 650 (1986). In this case, however, it is not necessary to determine whether *Merrell Dow* precludes federal question jurisdiction because diversity jurisdiction exists.

Plaintiff argues that notwithstanding the existence of a federal question, there is diversity jurisdiction for her state claim. Defendant argues that there is no diversity jurisdiction because the plaintiff has failed to show the existence of the jurisdictional amount in controversy.[7] Plaintiff argues that the amount in controversy should include the entire amount of her home which defendant sought to foreclose. Furthermore, plaintiff is seeking punitive damages under the Illinois consumer fraud statute. Ill.Rev.Stat., ch. 121½, ¶ 261 *et seq.* Defendant argues that the only amount that could be at issue is the approximately $2,000 of late charges which defendant no longer seeks and for which it has already rescinded its demand.

■ A plaintiff's general allegation that the jurisdictional amount exists is sufficient unless it is so contradicted by the party's allegations that the court must dismiss *sua sponte* or on defendant's motion. *Gibbs v. Buck*, 307 U.S. 66, 72, 59 S.Ct. 725,

---

7. Defendant also argues that plaintiff has failed to state a claim based on state law.

729, 83 L.Ed. 1111 (1939). Once challenged, however, the party seeking federal jurisdiction has the burden of proving the existence of the amount by showing that there is a potential for more than the jurisdictional amount. *Loss v. Blankenship,* 673 F.2d 942 (7th Cir.1982); *see St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938) (claim must be made in objective good faith with at least a colorable assertion). In this case, plaintiff must show a rational basis for the over $50,000 *ad damnum. Griffin v. Dana Point Condominium Ass'n,* 765 F.Supp. 498, 499 (N.D.Ill.1991); *Bellock v. Orkin Exterminating Co., Inc.,* 754 F.Supp. 122, 123 (N.D.Ill.1990) (must show by competent proof). Plaintiff is entitled to considerable latitude in proving allegations of the jurisdictional amount. *Racich v. Mid Continent Builders Co.,* 755 F.Supp. 228, 229 (N.D.Ill.1991); *Bellock,* 754 F.Supp. at 125. Practically speaking, in order to successfully challenge the jurisdictional amount, the defendant has the burden of showing to a legal certainty that the claim is really for less than the jurisdictional amount. *Interpane Coatings, Inc. v. Australia & New Zealand Banking Group, Ltd.,* 732 F.Supp. 909, 913 (N.D.Ill.1990).

■■■■■ The jurisdictional amount is determined at the time the action is commenced and is not divested by subsequent events. *Sarnoff v. American Home Prods. Corp.,* 798 F.2d 1075, 1078 (7th Cir. 1986) (citing 14A Federal Practice and Procedure § 3702). Therefore, the fact that defendant withdrew its foreclosure action after plaintiff filed this action is not relevant to whether the jurisdictional amount existed at that time. Plaintiff argues that the amount in controversy includes, not only the late charges of approximately $2,000, but also the value of the property that plaintiff was attempting to prevent Keycorp from acquiring, emotional distress and legal expenses incurred as a result of the wrongful acceleration of her mortgage, and punitive damages for violation of state consumer fraud statutes. Plaintiff has alleged that defendant had a practice of intentionally, or with extreme indifference,

wrongfully initiating foreclosure proceedings just after plaintiff and others completed Chapter 13 plans. Defendant claims in response that the foreclosure proceedings which sparked this litigation where the result of administrative error only. Plaintiff's claim for punitive damages, assuming one exists, could presumably exceed the jurisdictional amount. It is not clear that plaintiff's state claim for punitive damages is, to a legal certainty, for less than the jurisdictional amount. Therefore, the jurisdictional amount in question is deemed satisfied for diversity jurisdiction.

■■■■■ Defendant argues that, even if there is diversity jurisdiction, plaintiff has failed to state a claim based on state law. *Mid–America Nat'l Bank of Chicago v. First Savings & Loan Ass'n of South Holland,* 161 Ill.App.3d 531, 113 Ill.Dec. 367, 373, 515 N.E.2d 176, 182 (1st Dist.1987). In *Mid–America,* the Illinois Appellate Court affirmed the trial court's dismissal for failure to state a claim. Plaintiff based a Consumer Fraud Act claim on defendant's violation of the National Flood Insurance Act. A federal district court dismissed plaintiff's earlier complaint because the National Flood Insurance Act did not provide a private right of action for violation of its notification provisions. Plaintiffs filed an amended complaint in state court and the Illinois Appellate Court affirmed an Illinois trial court's dismissal. The Appellate Court reasoned that federalism prevented Illinois courts from creating a state cause of action under the Illinois Consumer Fraud Act when the federal statute creating the standard of conduct did not provide for a private right of action. *Id.,* 113 Ill.Dec. at 370, 515 N.E.2d at 179.

Defendant argues that the *Mid–America* decision precludes plaintiff from stating an Illinois Consumer Fraud claim based on the Bankruptcy Code or the Chapter 13 plan. Defendant's argument misses the reasoning of the *Mid–America* decision. That court dismissed the case because the federal statute created the standard of conduct. Without a duty to disclose information under the federal statute, the Appellate Court reasoned, there could be no misrepresenta-

tion under the Consumer Fraud Act. 113 Ill.Dec. at 370–72, 515 N.E.2d at 179–81. In this case, the federal statute relied on by plaintiff does not provide the standard of conduct which is the basis for the consumer fraud claim. The Bankruptcy Code and the Chapter 13 plan merely provide for the discharge of the debt. It is the Consumer Fraud Act that creates the standard of conduct, namely that coercing plaintiff to pay a debt which is not owed violates Illinois law. Defendant cites no authority showing that this type of coercion falls outside Illinois' consumer fraud statute. Therefore, it must be assumed that plaintiff states a claim under Illinois law upon which relief can be granted.

### RESTITUTION AND EQUITABLE RELIEF

Plaintiff has not paid defendant any of the late charges. Her claim for restitution is therefore moot. Since plaintiff's claim for injunction is moot and since no late charges were paid by plaintiff, plaintiff's claim for equitable relief will be dismissed for failure to state a claim upon which relief can be granted.

### PRELIMINARY INJUNCTION

Plaintiff's claims for injunctive and declaratory relief are moot. Plaintiff's only remaining claim is for damages. Therefore, plaintiff's motion for preliminary injunction will be denied.

IT IS THEREFORE ORDERED that plaintiff's motions for class certification [6] and for preliminary injunction [4] are denied. Defendant's motion to dismiss [24] is granted in part and denied in part. Count I of the complaint is dismissed with prejudice. Count III of the complaint is dismissed with prejudice. Plaintiff's claims for declaratory and injunctive relief in Count II of the complaint are dismissed. The parties are directed to complete all discovery by May 25, 1993. A status hearing is set for March 25, 1993 at 9:15 a.m.